UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GETTY IMAGES (US), INC., | CASE NO. C13-0626JLR |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | |
| VIRTUAL CLINICS, et al., | |
| Defendants. | |

Before the court is Defendants Kendra and Ryan Camp's ("the Camps") motion to dismiss for lack of personal jurisdiction and improper venue. (Mot. (Dkt. # 15).) The Camps argue that they do not have sufficient contacts with the state of Washington to be sued here given that their business, which designs websites, operates out of Florida and has only two Washington customers. Plaintiff Getty Images (US), Inc. ("Getty") argues that the Camps' contacts with Washington are sufficient to establish personal jurisdiction. The court agrees with Getty, finding that all elements of the test for personal jurisdiction

ORDER- 1

are met and that venue is proper in the Western District of Washington. Accordingly, the motion is DENIED.

## I. BACKGROUND

This case is about pictures of cats and dogs. Getty controls the intellectual property rights to numerous pictures of cats and dogs. (Compl. (Dkt. # 1) ¶¶ 22-23.) Getty is a digital content provider that licenses imagery, video, and music to business customers for use in websites, books, newspapers, magazines, television, and other mediums. (*Id.* ¶¶ 12-13.) Getty owns some of the images it licenses and also acts as a distributor for numerous third-party content suppliers. (*Id.* ¶ 14.)

The Camps are a Florida couple who run a website design company from their home. (Camp Decl. (Dkt. # 16) ¶ 2.) They design websites for veterinarians and veterinary clinics, doing business under the name of Vet Web Designers.[1] (*Id.*) They use pictures of cats and dogs in the websites they design.

Getty claims that the Camps used pictures of cats and dogs that are exclusively licensed to Getty in designing a number of different websites nationwide. (*See, e.g.*, Compl. ¶ 25, 33.) For example, Getty claims that the Camps used Getty-owned or controlled images such as "200374104-001 Dog sleeping in bed between two people (focus on feet)," "200355950-001 Dog with suitcase, wearing Hawaiian shirt," and

---

[1] Getty names several other persons and entities as Defendants in this action, all of which are associated in one way or another with the Camps and their online business endeavors serving the veterinary community. (*See* Compl. ¶¶ 3-8.) These persons and entities include Virtual Clinics, Virtual Clinics US, Veterinary Web Designers, and several John Doe defendants. (*See id.*)

"BD8365-001 Chinchilla cat wearing diamond tiara, resting on cushion." (*Id.*) Getty's allegation is that the Camps used these images in an infringing manner on the websites they designed for their customers across the nation—two of which were websites for Washington veterinarians. (Compl. ¶ 33.) Getty alleges a single cause of action against the Camps—copyright infringement. (*Id.* ¶¶ 31-38.)

In this motion, the parties dispute whether the Camps—who have only two customers in Washington—have sufficient contacts with Washington that they may be sued here. The Camps claim they do not, testifying that they have never met with their two Washington customers in Washington, that these customers account for only 4% of their annual business, that they own no property in Washington, that they have no employees, no office, no mailing address, and no presence in Washington, do not pay taxes in Washington, are not licensed or regulated in Washington, and have no accounts or investments in Washington. (Camp Decl. ¶¶ 8-16.) In addition, they argue that it would not be fair for them to be hauled into court in Washington because they are retired and disabled, they live in Florida, they have "minimum financial resources," and they "have never personally tried to attract customers from Washington state or anticipated that [they] would have to face a lawsuit in Washington state . . . ." (*Id.* ¶¶ 3, 17-18.)

Getty, on the other hand, argues that the Camps have "numerous and repeated contacts with and activities directed toward [Washington] state." (Resp (Dkt. # 22) at 4.) Getty presents evidence that the Camps have had "numerous and repeated" contacts with their two Washington customers and have received "substantial and ongoing payments from them." (*Id.* at 5.) Getty also presents evidence that the Camps appeared at a

ORDER- 3

seminar in Bellevue, Washington in 2006, and that while there they solicited one of their two Washington customers.  (*Id.*)  Last, Getty alleges that the Camps have engaged in a campaign against them and their attorneys in connection with this lawsuit—filing bar complaints against their attorneys, contacting members of Congress, encouraging others to do the same, and creating the website "www.stopgettyimages.com."  (*Id.* at 6-8.)

## II.     ANALYSIS

The primary issue on this motion is whether the court has personal jurisdiction over the Camps.  The Camps also argue that venue is improper.

**A.     Personal Jurisdiction**

As Plaintiff, Getty bears the burden of establishing that the court has personal jurisdiction.  *See, e.g.*, *Zigler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  Because the court is resolving the motion to dismiss without holding an evidentiary hearing,[2] Getty "need make only a prima facie showing of jurisdictional facts to withstand the motion."  *Wash. Shoe Co. v. A-Z Sporting Goods*, *Inc*., 704 F.3d 668, 671-72 (9th Cir. 2012); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  That is, Getty "need only demonstrate facts that if true would support jurisdiction over [the Camps]."  *Id.*; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1085 (9th Cir. 2000) ("Where . . . the district court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting declarations, we will presume that the facts set forth therein can be proven.").

---

[2] No party has requested an evidentiary hearing.

1 In addition to Getty's complaint, the parties have submitted affidavits both in support of and in opposition to the motion. (*See, e.g.*, Camp Decl.; Bond Decl. (Dkt. # 23).) In determining whether Getty has met its burden of making a prima facie showing of jurisdictional facts, the court considers uncontroverted allegations in Getty's complaint as true and resolves conflicts between facts contained in the parties' affidavits in Getty's favor. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Because there is no federal statute governing personal jurisdiction in this case, Washington's long-arm statute applies. *Wash. Shoe*, 704 F.3d at 672. That statute extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Id.* (citing RCW 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)). Because Washington's long-arm statute is coextensive with federal due process, the state-law jurisdictional analysis is the same as the federal due process analysis. *AT & T Co. v. Compagnie Briaelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). "The relevant question, therefore, is whether the requirements of due process are satisfied by the exercise of personal jurisdiction over [the Camps] in Washington." *Id.* Federal due process requires that a defendant have sufficient minimum contacts with the forum state that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two different kinds of personal jurisdiction: general and specific. Getty does not attempt to argue that the court has general personal jurisdiction over the Camps.

(*See* Resp. at 13 n.7.)  "For general jurisdiction to exist, a defendant must engage in 'continuous and systematic general business contacts,' . . . that 'approximate physical presence' in the forum state."  *Marvix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223-24 (9th Cir. 2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)); *Bancroft & Masters, Inc.*, 223 F.3d at 1086).  "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *Id.* at 1224 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)).  Getty acknowledges that the Camps' contacts with Washington do not support general personal jurisdiction.  (Resp. at 13 n.7.)

Instead, Getty asserts specific personal jurisdiction.  (Resp. at 12.)  The Ninth Circuit applies a three-part test to determine whether a court has specific personal jurisdiction.  Specific personal jurisdiction exists if (1) the defendant purposefully directs his activities or consummates some transaction with the forum or a resident thereof, or performs some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, (2) the claim arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.  *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).  Getty bears the burden of establishing the first two prongs.  *CollegeSource*, 653 F.3d at 1076.  The burden then shifts to the Camps to

set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Rudzewicz*, 471 U.S. at 476-78). The court will address each of these three factors.

        1.   <u>Purposeful Activities or Direction</u>

The first prong of the specific personal jurisdiction test refers to both purposeful direction and purposeful availment. Although often "clustered together under a shared umbrella," purposeful availment and purposeful direction "are, in fact, two distinct concepts." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)). A purposeful availment analysis is most often used in suits sounding in contract, and a purposeful direction analysis is used in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802. This case presents only a single claim for copyright infringement (Compl. ¶¶ 31-38), and the Ninth Circuit typically characterizes copyright infringement as akin to tort claims for purposes of the personal jurisdiction analysis. *Brayton Purcell*, 606 F.3d at 1128. Accordingly, the court considers the purposeful direction analysis here.[3]

Under the purposeful direction analysis, the court inquires whether a defendant purposefully directs his activities at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *CollegeSource*, 653 F.3d at 1077. The

---

[3] The court notes that the first prong is satisfied by a finding of either purposeful availment or purposeful direction. *See Brayton Purcell*, 606 F.3d at 1128.

"effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Brayton Purcell*, 606 F.3d at 1128).

   a. *Intentional act*

The first element of the effects test, the "intentional act" requirement, requires "an external manifestation of the actor's will" with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell*, 606 F.3d at 1128. There is no requirement that the alleged intentional act occur within Washington. *See, e.g.*, *Sleep Science Partners v. Lieberman*, No. C 09-04200 CW, 2009 WL 4251322, at *3 (N.D. Cal. Nov. 23, 2009) ("[T]he effects test does not require that the intentional act be committed in the forum, only that the wrongful conduct individually target a known forum resident.") (citing *Bancroft & Masters*, 223 F.3d at 1087; *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259-60 (9th Cir. 1989) (holding that Arizona court had jurisdiction over Canadian residents who, in response to calls directed at them in Canada, made defamatory statements about a person they knew resided in Arizona)).

Here, there is no doubt that the Camps are alleged to have committed intentional acts: they are alleged to have created websites that use copyrighted images. (*See* Compl.) They undoubtedly intended to create the websites and intended to place the images on the website that are now claimed to be in violation of the copyright laws. This constitutes an "actual, physical act in the real world," that satisfies the intentional act

ORDER- 8

requirement. *See Brayton Purcell*, 606 F.3d at 1128. However, this should not be confused with a finding that the Camps acted willfully as that term is understood under the copyright law. *See Wash. Shoe*, 704 F.3d at 673.

         *b. Expressly aimed at the forum state*

        The second prong of the effects test requires the Camps' acts to have been expressly aimed at the forum state. To meet the express aiming requirement, plaintiff must show that "'the defendant's actions outside the forum state are directed at the forum[.]'" *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A*, 802 F. Supp. 2d 1078, 1095 (N.D. Cal. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)). For example, express aiming encompasses situations "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087.

        The Ninth Circuit recently addressed the specific "express aiming" question at issue in this case. In *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, the Ninth Circuit examined the question of whether "tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." 647 F.3d 1218, 1229 (9th Cir. 2011). In *Mavrix*, like here, the plaintiff owned the licensing rights to photographs and was alleging copyright infringement by a website from another state. *Id.* at 1221-22. The plaintiff was a Florida corporation doing business in Florida, and the defendant was an Ohio corporation. *Id.* The plaintiff sued for copyright infringement in California. *Id.* The court held that there was "express aiming" at the

state of California because the website had a "specific focus" on California and that the defendant "anticipated, desired, and achieved a substantial California viewer base." *Id.* at 1230. The court stated that "it does not violate due process to hold [the defendant] answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians." *Id.*

Applying the holding of *Mavrix* to this case, there is express aiming here as well. The Camps created and maintained two websites for Washington veterinary clinics using allegedly infringing photos. (Bond Decl. (Dkt. # 23); Vaughn Decl. (Dkt. # 26).) These websites advertised veterinary clinics that served Washington residents and their pets. (*See* Bond Decl. ¶ 1; Vaughn Decl. ¶ 1.) In other words, they had a "specific focus" on Washington, and the Camps and their customers presumably anticipated and desired establishing a viewer base in Washington. *See Mavrix*, 647 F.3d at 1230. Just like in *Mavrix*, it would not violate due process to hold the Camps answerable in a Washington court for "the contents of a website whose economic value turns, in significant measure, on its appeal to" Washington residents. *See id.* This case is not identical to *Mavrix* because the Camps do not own the websites in question. However, they did design those websites, and they continue to maintain them. (*See* Bond Decl; Vaughn Decl.) Thus, the reasoning of *Mavrix* applies to this case and, applying that reasoning, the court concludes that the "express aiming" requirement has been met. *See Am. Auto. Ass'n, Inc. v. Darba Enter., Inc.*, No. C09-00510 SI, 2009 WL 1066506, at *4-5 (N.D. Cal. April 21, 2009).

       *c. Causing harm in the forum*

Finally, Getty must make a prima facie showing that Defendants' conduct "caused harm that they knew was likely to be suffered" in Washington. *See Brayton Purcell*, 606 F.3d at 1131. This third prong "is satisfied when [a] defendant's intentional act has foreseeable effects in the forum." *Id.* Here, the court concludes that the Camps' intentional act had foreseeable effects in Washington. First of all, "[t]he economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable." *Wash. Shoe*, 704 F.3d at 679 (citing *Mavrix Photo*, 647 F.3d at 1231). Further, it is foreseeable that the loss will be inflicted both in the forum where infringement took place and where "a jurisdictionally significant amount of [the Plaintiff's] economic harm took place . . . ." *Id.*; *Mavrix Photo*, 647 F.3d at 1231-32. Here, the alleged infringement took place (in part)[4] on two websites for Washington veterinarians that were accessible all over the world. However, as explained above, the websites were targeted at Washington residents, had a "specific focus" on Washington, and the economic value of the websites turns, in significant measure, on their appeal to Washington residents. Thus, following the reasoning of *Mavrix Photo*, the court concludes that a jurisdictionally significant amount of economic harm took place in Washington. *Mavrix Photo*, 647 F.3d at 1231-32. The third prong of the "purposeful direction" test is met.

---

[4] Getty alleges infringement based on numerous other websites as well (*See* Compl. ¶ 33), but only these two are important for the personal jurisdiction analysis.

ORDER- 11

Having concluded that all three prongs of the "purposeful direction" test are met, the court turns to whether the claims in the complaint arise out of the Camps' forum-related activities.

### 2. Claims Arise out of or Relate to Defendants' Forum-Related Activities

The second part of the test for specific personal jurisdiction directs the court to determine whether Getty's claims arise out of or relate to the defendant's forum-related activities. *CollegeSource*, 653 F.3d at 1076. To do so, the Ninth Circuit has adopted a "but for" analysis. *Gordon*, 680 F. Supp. 2d at 1286. Thus, specific personal jurisdiction is proper only if "but for" the Camps' alleged Washington-related activities, Getty's injuries would not have occurred. The Washington-related activities at issue here are the Camps' uses of allegedly infringing photos on websites aimed at Washington residents. Getty's claims are based, in part, on these allegedly infringing activities. Thus, Getty's injuries related to these activities would not exist "but for" the activities. The second part of the test for specific personal jurisdiction is met.

### 3. Reasonableness of Exercising Jurisdiction

The first two steps having been established, the burden now shifts to the Camps to "present a compelling case" that the exercise of jurisdiction over them would be "unreasonable and therefore violate due process." *CollegeSource*, 653 F.3d at 1079. The court looks to seven factors to make this determination: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* The court considers each factor in turn.

### a. Extent of purposeful interjection

This factor weighs against exercising personal jurisdiction. Even though the court has already determined that the Camps purposefully directed their alleged tortious conduct at Washington, the degree of interjection is nonetheless a factor in assessing the overall reasonableness of jurisdiction under this prong. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). Here, the extent of purposeful interjection was limited. The Camps designed and operated only two websites in Washington out of some 50 clients they had in total. The Camps testify that they have never met with their two Washington customers in Washington, that these customers account for only 4% of their annual business, that they own no property in Washington, that they have no employees, no office, no mailing address, and no presence in Washington, and that they do not pay taxes in Washington, are not licensed or regulated in Washington, and have no accounts or investments in Washington. (Camp Decl. ¶¶ 8-16.) Getty disputes some, but nowhere close to all, of these facts. (*See generally* Resp.) In light of all this, the court concludes that the degree of purposeful interjection is limited and that this factor weighs against exercising personal jurisdiction.

### b. Burden on defendant

This factor weighs against exercising personal jurisdiction. The Ninth Circuit has noted that "modern advances in transportation and communications have significantly

reduced the burden of litigation in another country." *Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1133. This reasoning applies to other states as well: modern conveniences have reduced the burden associated with litigating in other states. The Camps argue that it would be an undue burden to force them to litigate in Washington because they are "an elderly couple with significant health problems who reside in Kissimmee, Florida, a city that is nearly 3000 miles from Seattle, Washington." (Mot. at 10.) Getty concedes that this factor weighs slightly against exercising personal jurisdiction, arguing only that the burden does not, on its own, amount to a deprivation of due process. (Resp. at 22.) The court agrees with the Camps that it would be a burden to force them to litigate in Washington—a state far from their home. Thus, this factor weighs against exercising personal jurisdiction.

        *c. Conflict with sovereignty*

This factor weighs in favor of exercising personal jurisdiction. This factor concerns whether the court's exercise of jurisdiction would conflict with the defendants' home state's sovereignty. *Openwave Sys. Inc. v. Fuld*, No. C-08-5683, 2009 WL 1622164, at *14 (N.D. Cal. June 6, 2009). The court can perceive no possible conflict with Florida's sovereignty lurking in this case. Indeed, the Camps do not even argue that Florida's sovereignty is implicated in any way.

        *d. Forum state's interest in the dispute*

This factor weighs in favor of exercising personal jurisdiction. The Ninth Circuit has indicated that a forum state has a strong interest in resolving the tort claims of its residents. *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991); *see also Meyers v.*

ORDER- 14

*DCT Technologies, Inc.*, No. 11–cv–05595 RBL, 2012 WL 1416264, at *7 (W.D. Wash. Apr. 24, 2012). And while it is true that Getty is a New York corporation with its principal place of business in New York, Getty has an office in Seattle with close to 500 employees. (Resp. at 22.) Washington has an interest in protecting companies that choose to do business in Washington from the tortious conduct of others, even if those others are operating in another state. *See Roth*, 942 F.2d at 624; *Meyers*, 2012 WL 1416264, at *7.

     *e. Efficient judicial resolution*

This factor is neutral. As other courts have stated, this factor is "no longer weighed heavily given the modern advances in communication and transportation." *See, e.g.*, *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). This factor focuses on the location of evidence and witnesses. *Id.* In this case, there are potential witnesses in many different places. The complaint concerns websites for businesses all across the nation. (*See* Compl.) Presumably, the Camps will need to testify, as will some Getty employees and perhaps various website owners. The court can perceive no distinct advantage to litigating this case in any particular forum, at least as far as witnesses and evidence are concerned, and accordingly this factor is neutral.

     *f. Importance of the forum to plaintiff*

This factor slightly favors exercising personal jurisdiction. Getty clearly prefers Washington as a forum over Florida, as evidenced by its response to the Camps' motion. Getty may incur some additional fees and costs by being forced to litigate in Florida. However, as Getty admits, this burden would be "relatively slight." (Resp. at 23.)

*g. Existence of an alternative forum*

This factor weighs against exercising personal jurisdiction. There is another forum available to the parties, and neither party disputes that the Middle District of Florida would be an adequate forum for this case.

		*h. Weighing the factors*

Having considered each factor as outlined above, the court concludes that the Camps have not met their burden of demonstrating that an exercise of personal jurisdiction would be unreasonable. The Camps' burden is to "present a compelling case" that the exercise of jurisdiction over them would be "unreasonable and therefore violate due process." *CollegeSource*, 653 F.3d at 1079. As demonstrated above, the factors the court has considered are equivocal—some suggest exercising jurisdiction, others suggest the opposite. There is no clear indication that one path would be better than the other. In light of this mixed record, the court concludes that the Camps have not made a "compelling case" that the exercise of jurisdiction would be unreasonable. Accordingly, the court has personal jurisdiction over this case.

**B.	Venue**

	1. Venue is proper in the Western District of Washington

Next, the Camps argue that venue is improper in the Western District of Washington. In a copyright case, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "The Ninth Circuit interprets this statutory provision to allow venue "in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state."

ORDER- 16

*Brayton Purcell*, 606 F.3d at 1128. The court has already determined that there is personal jurisdiction over the Camps in the Western District of Washington. Accordingly, under 28 U.S.C. § 1400(a), venue is proper as well.

      2.  <u>The court will not transfer venue</u>

Last, the Camps argue that venue should be transferred to the Middle District of Florida. Indeed, even if venue is proper in the Western District of Washington, the court has discretion under 28 U.S.C. § 1404 to transfer this case to another district where venue is proper. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Section 1404(a) permits transfer to a state with proper venue based on convenience and justice:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Pedigo Prod., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 3:12-CV-05502-BHS, 2013 WL 364814, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). The parties do not dispute that this case could have been brought in the Middle District of Florida, so disposition of this motion depends on whether transfer to Florida is convenient and just. The Camps bear the burden of showing transfer is appropriate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

The Ninth Circuit has established a balancing test to determine whether to transfer a case under § 1404(a). *Jones*, 211 F.3d at 498. The court considers the following factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, [] (8) the ease of access to sources of proof," and (9) the public policy considerations of the forum state. *Id*. at 498-99.

Applying these factors, the court will not exercise its discretion to transfer venue. The court has already considered most of these factors in determining whether it has personal jurisdiction over the Camps and only addresses the factors that are not considered in one form or another in the above analysis—factors (2), (7), (8), and (9). Factor (2) does not apply here, factor (7) is neutral, and with respect to factors (8) and (9), the court is not aware of any compulsory process concerns or special policy considerations that counsel in favor of transferring this case to Florida. Nor do the Camps point to any. As such, and for the reasons described above with respect to personal jurisdiction, the court finds that the Camps have not met their burden of demonstrating that the court should exercise its discretion to transfer venue.

//

//

//

ORDER- 18

### III.   CONCLUSION

For the foregoing reasons, the court DENIES the Camps' motion to dismiss (Dkt. # 15).

Dated this 9th day of September, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 19