1

2

3

4

5

6

7

The Honorable James L. Robart

8    UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9    AT SEATTLE

10   GETTY IMAGES (US), INC., a New
York corporation,

11                                               No. 2:13-cv-00626-JLR

12                          Plaintiff,           GETTY IMAGES' POST-HEARING
BRIEF REGARDING PERMANENT
13           v.                                  INJUNCTION

14   VIRTUAL CLINICS, d/b/a VIRTUAL
CLINICS USA; VETERINARY
15   WEBSITE DESIGNERS, d/b/a VET
WEB DESIGNERS; RONALD CAMP;
16   KENDRA RYAN, a/k/a KENDRA
CAMP; JOHN DOE ONE, a/k/a ABE and
17   ABRAHAM GOLDSTIEN; and JOHN
DOE TWO, a/k/a HARRY GRANGER,

18                          Defendants.

19

20

21          Plaintiff Getty Images (US), Inc. ("Getty Images") submits this brief to address five

22   issues raised by the Court at the February 25, 2014 evidentiary hearing regarding Getty

23   Images' request for maximum enhanced statutory damages and a permanent injunction

24   against defendants Ronald Camp and Kendra Ryan, a/k/a Kendra Camp (collectively, "the

25   Camps").  All issues relate to Getty Images' request for a permanent injunction:

26

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 1

1        (1)     Whether this Court should permanently enjoin the Camps from

2    modifying, altering, or incorporating copyright-protected elements of Getty Images'

3    works in new works;

4        (2)     Whether this Court should permanently enjoin the Camps from

5    infringing Getty Images' works that were not named in the Complaint;

6        (3)     Whether this Court should permanently enjoin the Camps from

7    assisting, aiding, or abetting any other person from infringing Getty Images' works;

8        (4)     Whether this Court should order the Camps to delete all unlicensed

9    copies of Getty Images' works from their computers and the websites they control;

10    and

11        (5)     Whether a bond is required for the permanent injunction.

12    Getty Images addresses the Court's questions in the order in which they were presented.

## I.    The Court Should Enjoin the Camps from Modifying, Altering, or Incorporating Copyright-Protected Elements of Getty Images' Copyrighted Works in New Works.

Getty Images' Proposed Permanent Injunction prohibits the Camps from "modifying, altering or incorporating copyright-protected elements of the copyrighted works . . . in new works."  Proposed Permanent Injunction (Dkt. No. 35-2) ¶ 1(b).  At the evidentiary hearing, the Court requested authority for such an injunction.

This relief is appropriate and necessary because, as described by Getty Images' Senior Director for Copyright Compliance, Carlos Pinto, the Camps repeatedly have made crude alterations to Getty Images' works, whether in a failed attempt to conceal their infringement from Getty Images or in the mistaken belief that altering the photographs relieves them of liability for copyright infringement.[1]

---

[1] At the evidentiary hearing, Mr. Pinto testified that Getty Images' photographs had been modified on some of the websites created and operated by the Camps.  Mr. Pinto described the modifications made to the image "Cat and dog taking pictures of themselves (888301298)," the Camps' infringement of which was discovered earlier this year.  Mr. Pinto also described a modification to one of the registered images for which Getty Images seeks maximum enhanced statutory damages – "200396789-001 Brown and white dog licking tabby



The Copyright Act grants copyright owners the exclusive right to "prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2). By modifying Getty Images' works, the Camps are preparing unauthorized derivative works based upon Getty Images' photographs. This is copyright infringement. 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright . . . ."). Courts in the Ninth Circuit properly enjoin such conduct under 17 U.S.C. § 502(a). *See, e.g.*, *Munoz v. Albuquerque A.R.T. Co.*, 829 F. Supp. 309, 317 (D. Alaska 1993) (entering permanent injunction against defendant's creation of ceramic tile derivative works incorporating plaintiff's images), *aff'd* 38 F.3d 1218 (9th Cir. 1994); *Playboy Enters., Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856, at *3 (S.D. Cal. Mar. 25, 1998) (permanently enjoining defendant website operator from "copying, reproducing, distributing, displaying, *or preparing any derivative works* of any copyrighted images owned by plaintiff") (emphasis added).

Because the Camps have infringed Getty Images' copyrighted works by altering those works without authorization, this Court should permanently enjoin such infringing modification.

## II. The Court Should not Limit the Permanent Injunction to the Specific Works Alleged in the Complaint.

At the evidentiary hearing the Court asked whether it could order that the Camps be permanently enjoined from infringing Getty Images' works in addition to the twelve copyrighted works named in the Complaint. Given the Camps' pattern of repeated and serial infringement – as alleged in the Complaint and shown by the Pinto Declarations

---

cat," Certificate of Registration VAu 713-178 (dated August 18, 2006). Exhibit 1-A is a printout of that image. Exhibit 1-B is a screenshot of from one of the Camps' websites, www.canyonparkvet.com, demonstrating the Camps' infringing use of an identical version of that image. Exhibit 1-C is a screenshot from the same website as archived by a non-profit organization called the Internet Archive, using the search feature at www.archive.org. Exhibit 1-C shows the crude modifications to the "brown and white dog licking tabby cat" image that the Camps apparently made after Getty Images gave notice of the infringement. As the Court can observe from these materials, the Camps altered the cat's face.

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 3



818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   (Dkt. Nos. 36 & 43) and Mr. Pinto's live testimony – the permanent injunction should not

2   be limited to the twelve copyrighted works named in the Complaint.  Indeed, as Mr. Pinto

3   described at the evidentiary hearing, Getty Images has recently discovered the Camps'

4   ongoing infringement of two of Getty Images' works on at least five websites.  At the time

5   of the lawsuit, Getty Images was not aware of the Camps' infringement of those works, and

6   at least one of the websites upon which one infringing image is currently displayed was

7   created by the Camps just days after Getty Images filed its Complaint.

8           The Ninth Circuit Court of Appeals considered this issue in the context of a

9   permanent injunction issued against a small computer manufacturer arising from its

10   infringement of Apple's operating system Mac OS X.  *Apple Inc. v. Psystar Corp.*, 658 F.3d

11   1150, 1152 (9th Cir. 2011) (*Apple II*).  In that case, the district court had issued a permanent

12   injunction against the defendant's infringement of the operating system.  *Apple Inc. v.*

13   *Psystar Corp.*, 673 F. Supp. 2d 943, 955 (N.D. Cal.) (*Apple I*).  The defendant argued that

14   Apple's latest update to its operating system, called "Snow Leopard," should have been

15   excluded from the permanent injunction.  The district court rejected the defendant's request,

16   despite the fact that Snow Leopard was a new version of the Mac OS X operating system.

17   In upholding the district court's permanent injunction, the Ninth Circuit observed:

18          Courts have extended injunctive relief beyond the four corners of the
           litigated copyrighted works to cover non-litigated items of similar
19          character.  [citations omitted]  Here, . . . it is appropriate to permanently
           enjoin the future infringement of copyrighted works, such as Snow
20          Leopard, even if not directly in issue because liability has been established
           as between the parties, and the threat of harm through future infringement
21          of Snow Leopard is real.

22   *Apple II*, 658 F. Supp. 2d at 1161 (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 568

23   (D.C .Cir. 1990) ("Where, as here, liability has been determined adversely to the infringer,

24   there has been a history of continuing infringement and a significant threat of future

25   infringement remains, it is appropriate to permanently enjoin the future infringement of

26   works owned by plaintiff but not in suit.")); *see also IO Group, Inc. v. Antelope Media,*

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 4

YARMUTH WILSDON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

*LLC*, 2010 WL 2198707, at *2 (N.D. Cal. May 28, 2010) ("[B]ecause defendants continue to operate commercial websites that display infringing material, a threat exists that defendants will continue to infringe plaintiff's copyrighted works, and such threat is not limited solely to the nine works as to which plaintiff has offered evidence of infringement."); *Microsoft Corp. v. Lopez*, No. C08-1743-JCC, 2009 WL 959219, at *5 (W.D. Wash. Apr. 7, 2009) (permanently enjoining defendant software counterfeiter from "imitating, copying, or making any other infringing use or infringing distribution of the software and/or materials now or hereafter protected by the copyright Certificate Registration Number: TX 5-407-055 (Microsoft Windows XP) [the software at issue in the case], *in addition to any other items or works now or hereafter protected by any Microsoft copyright . . . .*") (emphasis added).

Given that the Camps have continued to infringe Getty Images' works, and have engaged in a pattern of serially infringing multiple Getty Images photographs, this Court should – as authorized by the authority set forth above – permanently enjoin the Camps from "making any infringing uses of photographic images owned by or exclusively licensed to Getty Images."  Proposed Permanent Injunction ¶ 1(c).

**III.   The Court Should Permanently Enjoin the Camps from Assisting, Aiding, or Abetting any other Person from Infringing Getty Images' Works.**

Getty Images requested that the Court permanently enjoin the Camps from "assisting, aiding or abetting any other person or entity in engaging" in copyright infringement.  Proposed Permanent Injunction ¶ 1(d).  The Court asked Getty Images for authority to enjoin the Camps from conduct that does not constitute direct infringement.

As discussed at the evidentiary hearing, the "assisting, aiding or abetting" language Getty Images proposes is identical to the language of a permanent injunction the Honorable John C. Coughenour, United States District Judge for the Western District of Washington, entered against infringers of Microsoft's copyrights.  *See Microsoft Corp. v. Lopez, et al.*,

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 5

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

No. C08-1743-JCC, 2009 WL 959219 (W.D. Wash. Apr. 7, 2009).[2]  In *Lopez*, the

defendants had distributed counterfeit copies of Microsoft Windows XP, infringing

Microsoft's copyright and other rights in that work.  Judge Coughenour permanently

enjoined the defendants from "assisting, aiding, or abetting any other person or business

entity engaging in or performing any" copyright infringement, trademark infringement, and

other violations of Microsoft's rights.  *Lopez*, 2009 WL 959219, at *6.

Other courts in the Ninth Circuit have issued similar permanent injunctions.  *See,*

*e.g.*, *Microsoft Corp. v. EEE Business Inc., et al.*, 555 F. Supp. 2d 1051, 1061 (N.D. Cal.

2008) (enjoining defendants from "assisting, aiding, abetting any other person or business

entity in engaging in or performing any" acts constituting copyright infringement against

Microsoft); *DFSB Kollective Co., Ltd., et al. v. Bing Yang, et al.*, No. C 11-1051 CW,

Permanent Injunction (Dkt. No. 39) (N.D. Cal. Mar. 28, 2013) (enjoining defendants from

"contributing to, assisting, aiding, abetting, or facilitating" copyright infringement).

By the "assisting, aiding, or abetting" language proposed for the permanent

injunction, this Court would properly enjoin future contributory copyright infringement by

the Camps.  *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("One who, with

knowledge of the infringing activity, induces, causes, or materially contributes to the

infringing conduct of another may be liable as a contributory copyright infringer.") (citing

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.

1971) (internal quotations omitted)).  The Camps indisputably have directly infringed Getty

Images' copyrights.  They have used aliases (Abraham Goldstien and Harry Granger) in

apparent efforts to lend an imprimatur of respectability to their infringing business.  The

Camps should not be permitted to avoid responsibility for continued infringement merely

---

[2] Per the Court's request, *Lopez* is attached hereto as Exhibit 2, along with the permanent injunctions entered in *EEE Business* and *DFSB Kollective*.

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 6



818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

by shifting their efforts from direct infringement to assisting others in the infringement of Getty Images' copyrights.

## IV. The Court Should Order the Camps to Delete all Unlicensed Copies of Getty Images' Works from the Camps' Computers and Websites they Control.

At the evidentiary hearing, the Court asked Getty Images' counsel to clarify the Court's authority to order that the Camps delete unlicensed copies of Getty Images works.

The Copyright Act provides:

> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

17 U.S.C. § 503(b). As stated at the evidentiary hearing, Getty Images is not requesting that the Camps' computers be destroyed. Rather, the proposed permanent injunction requires the Camps to delete all unlicensed copies of Getty Images' works from their computers and the websites they control.

Courts in the Ninth Circuit regularly order the destruction of infringing copies of electronic material pursuant to their authority under 17 U.S.C. § 503(b). *See, e.g.*, *Sony BMG Music Entm't v. Gray*, No. C-07-4854 WDB, 2008 WL 4239219, at *3-*4 (N.D. Cal. Sept. 15, 2008) (ordering defendant to destroy all downloaded copies of plaintiff's music recordings under 17 U.S.C. § 503(b)); *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 WL 337836, at *11 (N.D. Cal. Jan. 31, 2011) (ordering destruction of illegally obtained copies of software); *cf. Playboy Enterprises Inc. v. Sanfilippo*, No. 97-0670-IEG(LSP), 1998 WL 207856, at *3 (authorizing plaintiff to destroy infringing electronic data files of plaintiff's images, which had been seized from defendant); *IO Group, Inc. v. Jordan*, 708 F. Supp. 2d 989, 1001-02 (ordering impoundment of defendant website operator's infringing copies of plaintiff's copyrighted photographs and audiovisual material under 17 U.S.C. § 503).

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 7

YARMUTH WILSON PLLC

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

**V.      No Bond is Required for a Permanent Injunction.**

17 U.S.C. § 502(a) permits a district court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Had Getty Images sought a preliminary injunction or temporary restraining order against the Camps' copyright infringement, Getty Images would have been required to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "Rule 65(c) applies only to temporary restraining orders or preliminary injunctions." *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1108 n.8 (9th Cir. 2003) (citing *Ty, Inc. v. Publications Int.*, 292 F.3d 512, 516 (7th Cir. 2002)). A permanent injunction does not require the provision of security. *Id.*

DATED:  February 28, 2014.

YARMUTH WILSDON PLLC

By *s/Jeremy E. Roller*
Scott T. Wilsdon, WSBA No. 20608
Jeremy E. Roller, WSBA No. 32021
818 Stewart Street, Suite 1400
Seattle, WA  98101
Phone: 206.516.3800
Fax: 206.516.3888
Email: wilsdon@yarmuth.com
            jroller@yarmuth.com

*Attorneys for Plaintiff Getty Images (US), Inc.*

YARMUTH WILSDON PLLC
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.

I also certify that I caused copies of the foregoing to be deposited with the United States Postal Service, with first class postage affixed, addressed to the following non-CM/ECF participants:

> Ronald Camp
> 8616 Cavendish Drive
> Kissimmee, FL 34747
>
> Kendra Ryan, a/k/a Kendra Camp
> 8616 Cavendish Drive
> Kissimmee, FL 34747

I also certify that I electronically mailed copies of the foregoing to the following electronic mail addresses, which have been used by the Camps: jeang@gmail.com, drcamp@virtualclinics.net, ceo@virtualclinics.net, accounting@virtualclinics.net, legal@virtualclinics.net, graphics@vetwebdesigners.com, ceo@vetwebdesigners.com, contact@animalhousemagazine.com.

DATED February 28, 2014.

**YARMUTH WILSDON PLLC**

By _/s/ Jeremy E. Roller_
Scott T. Wilsdon, WSBA No. 20608
Jeremy E. Roller, WSBA No. 32021
818 Stewart Street, Suite 1400
Seattle, WA 98101
Phone: 206.516.3800
Fax: 206.516.3888
Email: wilsdon@yarmuth.com
          jroller@yarmuth.com

*Attorneys for Plaintiff Getty Images (US), Inc.*

GETTY IMAGES' POST-HEARING BRIEF
REGARDING PERMANENT INJUNCTION
NO. 2:13-cv-00626-JLR – Page 9



750.03 ob191501 2/28/14

# EXHIBIT 1

# EXHIBIT 1-A

"Brown and white dog licking tabby cat"



| Title: | Brown and white dog licking tabby cat |
| --- | --- |
| Creative image #: | 200396789-001 |
| License type: | Rights-managed |
| Photographer: | GK Hart/Vikki Hart |
| Collection: | Stone |
| Credit: | GK Hart/Vikki Hart |
| Max file size/dimensions/dpi: | 53.2 MB - 4300 x 4325 px (14.33 x 14.42 in.) - 300 dpi - RGB Download file size may vary. |
| Release information: | This image has a signed property release. This image is available for commercial use. |
| Keywords: | Friendship, Togetherness, Endurance, Square, Outdoors, Affectionate, Animal Body Part, Tabby, Animal Head, Animal Tongue, Washing, Domestic Cat, Day, Licking, Terrier, Grooming, Cute, Color Image, Two Animals, No People, Photography, Kitten, Pets. Find similar images |
| Availability: | Availability for this image cannot be guaranteed until time of purchase. |

Getty Images reserves the right to pursue unauthorized users of this image or clip. If you violate our intellectual property you may be liable for: actual damages, loss of income, and profits you derive from the use of this image or clip, and, where appropriate, the costs of collection and/or statutory damages up to $150,000 (USD).

GETTY IMAGES' POST-HEARING BRIEF RE PERMANENT INJUNCTION
NO. 2:13-cv-00626 - Page 12

All contents copyright 1999-2012 Getty Images, Inc. All rights reserved.

# <u>EXHIBIT 1-B</u>

"Brown and white dog licking tabby cat" as
displayed on www.canyonparkvet.com

Canyon Park Veterinary Hospital Bothell WA pet clinics and pet boarding - Mozilla Firefox

File   Edit   View   History   Bookmarks   Tools   Help

Most Visited   Getting Started   Latest Headlines

http://www.canyonparkvet.com/

Canyon Park Veterinary Hospital Bot...



within 1-2 weeks.

- When your pet needs the services of a Specialist, we'll inform you of your choices, giving you names of only the most qualified doctors. We will also advise you as to pricing options.

- Whenever we're able to research information from a Specialist before beginning your pet's treatment regimen we will. This service not only saves you time in making critical medical decisions about the treatment available for your pet, but saves you money as well.

- Our veterinarians constantly stay current on the latest veterinary medical advancements and treatment protocols to eliminate the need for expensive Specialists whenever possible.

- We compare suppliers' costs across the country so as to always keep costs as low as possible on prescription diets, veterinary products, as well as medical services and procedures.

## WE'RE YOUR OTHER FAMILY DOCTOR

Our veterinary staff is a great team. From our Receptionists to our skilled Veterinary Assistants, we will make every effort to your pet's appointment needs in a timely manner, as well as answering all your questions. Our staff will show you how to medicate and care for your pet after surgery. Our Kennel Staff will make your four-legged family members feel comfortable and safe.

## OUR PHILOSOPHY IS SIMPLE

We pledge to give all our patients the most competent, highest quality medical and surgical care, treating your pet as if it were our own at a cost that your family can afford. If we can't provide what your pet requires, we will guide you to a facility that can. We are your partners in pet care, and we're happy to provide support and information enabling you to give your pet the finest possible care at home, including proper nutritional advice, wellness programs, and senior care. Save time by taking advantage of our online forms.

Pet Library

Lost & Found Pets

Rainbow Bridge

This website designed and hosted by
Vet Website Designers

# <u>EXHIBIT 1-C</u>

"Brown and white dog licking tabby cat" as
altered on www.canyonparkvet.com

Canyon Park Veterinary Hospital Bothell WA pet clinics and pet boarding

## OUR PHILOSOPHY IS SIMPLE



We pledge to give all our patients the most competent, highest quality medical and surgical care, treating your pet as if it were our own at a cost that your family can afford.  If we can't provide what your pet requires, we will guide you to a facility that can.  We are your partners in pet care, and we're happy to provide support and information enabling you to give your pet the finest possible care at home, including proper nutritional advice, wellness programs, and senior care.  Save time by taking advantage of our online Forms.



Rainbow Bridge



This website designed and hosted by Vet Website Designers



FAX (425) 481-1774



We Accept All Major Credit Cards



CLICK HERE for Care Credit Information

https://web.archive.org/web/20120413233501/http://www.canyonparkvet.com/ (4 of 5) [2/28/2014 9:49:08 AM]

# EXHIBIT 2

# MICROSOFT CORPORATION
## v.
## LOPEZ, et al.

2009 WL 959219
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.

MICROSOFT CORPORATION, a
Washington corporation, Plaintiff,
v.
Fernando LOPEZ, d/b/a "Computer
Service" and "Computer Service Engineers"
and John Does 1-10, Defendants.

No. C08-1743-JCC.  |  April 7, 2009.

**Attorneys and Law Firms**

David A. Bateman, Michelle D. Jensen, K & L Gates LLP,
Seattle, WA, for Plaintiff.

**Opinion**

**ORDER GRANTING MICROSOFT
CORPORATION'S MOTION FOR
ENTRY OF DEFAULT JUDGMENT AND
PERMANENT INJUNCTION AGAINST
DEFENDANT FERNANDO LOPEZ**

JOHN C. COUGHENOUR, District Judge.

**\*1** This matter comes before the Court on Plaintiff Microsoft
Corporation's ("Microsoft") Motion for Entry of Default
Judgment and Permanent Injunction Against Defendant
Fernando Lopez (Dkt. No. 12). Defendant Fernando Lopez
has filed no response and has not otherwise appeared in
this action, despite being properly served with a summons
and the Complaint on December 4, 2008. (Dkt. No. 5.) The
Court has carefully considered the motion, the declaration
and exhibit filed in support of the motion, and the balance
of pertinent materials in the case file and has determined that
oral argument is not necessary. The Court hereby GRANTS
the motion and finds and rules as follows.

**I. BACKGROUND**

According to Microsoft's Complaint, Defendant Fernando
Lopez, a California citizen, distributes counterfeit computer
software using the Internet, through such means as the
website www.craigslist.org ("Craigslist"). (Compl. ¶ 3 (Dkt.
No. 1).) After Microsoft investigators purchased a counterfeit

copy of Microsoft Windows XP operating system software
through Defendant, Microsoft sent Defendant a cease and
desist letter notifying him that the purported Microsoft
Windows software he distributed was counterfeit, that he
could be subject to civil liability for violation of federal
copyright and trademark laws-up to $150,000 for each willful
copyright infringement and up to $1,000,000 for willful
trademark infringement-and that if he had any questions, he
could contact Microsoft. (September 30, 2008, Letter (Dkt.
No. 13 at 5).) Despite receiving the cease and desist letter on
October 2, 2008 (FedEx Tracking Receipt (Dkt. No. 13 at 7)),
Defendant allegedly continued to distribute the counterfeit
software; Microsoft investigators again purchased counterfeit
copies of Windows XP from Defendant, via telephone and
through direct email. (Compl. ¶ 21 (Dkt. No. 1).)

On December 3, 2008, Microsoft initiated this lawsuit,
seeking to recover damages from Defendant's alleged
infringements of Microsoft's copyrights and seeking to enjoin
Defendants' future infringements. [1] (*Id.* ¶ 1.) Attached to its
Complaint are copies of Microsoft's pertinent copyright and
trademark registrations. (Copyright registration for Microsoft
Windows XP Professional (Dkt. No. 1 at 17); Trademark
registrations for Microsoft and Windows XP (Dkt. No. 1 at
20-30).) On December 4, 2008, Microsoft served Defendant
with a summons and the Complaint via substitute service at
a residence believed to be Defendant's usual place of abode
and on an individual of suitable age and discretion residing
there, as permitted by Federal Rule of Civil Procedure 4(e)
(2)(B). (Affidavit of Service (Dkt. No. 5 at 1); Jensen Decl. ¶
3 (Dkt. No. 10 at 2).) Defendant failed to timely answer the
Complaint or otherwise appear in the action, so on February
2, 2009, Microsoft moved for an order of default. (Dkt. No.
9.) The Clerk entered an Order of Default against Defendant
on February 3, 2009. (Dkt. No. 11.) On March 31, 2009,
Microsoft filed the instant motion for a default judgment
comprised of copyright statutory damages in the amount of
$30,000 and a permanent injunction to prevent Defendant's
continued violation of Microsoft's copyrights.

**II. APPLICABLE STANDARDS**

**\*2** The Federal Rules and Local Rules authorize the Court
to enter a default judgment against a party after entry of
that party's default by the court clerk. FED. R. CIV. P.
55(b); Local Rule W.D. Wash. CR 55(b). "The district court's
decision whether to enter a default judgment is a discretionary
one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980).
The Ninth Circuit has explained that:

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir.1986).

In addition, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 702 (9th Cir.2008) (*quoting TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir.1987)). When determining the relief to be awarded in a default judgment, the Court must bear in mind that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).

## III. DISCUSSION

The Clerk of Court entered Defendant's default more than two months ago. (Dkt. No. 11.) Defendant still has not appeared in this action. Therefore, the Court must determine whether and how to order a default judgment.

### A. Liability

The Court considers the *Eitel* factors, summarized above, in determining whether to impose liability upon Defendant.

#### 1. The Possibility of Prejudice to Plaintiff

The Court finds that Microsoft would suffer prejudice if the default judgment is not entered because Microsoft would be without other recourse for recovery. *See Philip Morris USA Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 499 (C.D.Cal.2003) (finding same where non-appearing defendant imported counterfeit cigarettes, infringing plaintiff's registered trademarks). Microsoft alleges in its Complaint that Defendant's distribution and sale

of counterfeit copies of Microsoft software has caused and continues to cause Microsoft harm to its business reputation and goodwill by causing consumers to be confused, mistaken, or deceived about the authenticity of the Microsoft products distributed. (Compl. ¶ 22 (Dkt. No. 1 at 6).) As discussed above, because Defendant has defaulted, the Court accepts these allegations in the Complaint as true. Therefore, the likelihood of continuing harm to Plaintiff if the default judgment is not entered weighs in favor of the issuance of a default judgment.

#### 2. The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

**\*3** Microsoft has adequately pled its substantive claim of copyright infringement in its Complaint. Under section 501 of the Copyright Act, anyone who violates any of the exclusive rights of the copyright owner is an infringer. 17 U.S.C. § 501(a). Exclusive rights of copyright owners include, *inter alia,* reproducing the copyrighted work, preparing derivative works, and distributing copies to the public. 17 U.S.C. § 106. Microsoft has alleged that Defendants distributed infringing materials to the public without authorization by Microsoft. (Compl. ¶ 26 (Dkt. No. 1 at 6).)

Further, the fact, accepted herein as true, that Microsoft was able to purchase counterfeit copies of Microsoft software from Defendant even after Microsoft sent a cease and desist letter to his home, and the fact that Defendant has failed to appear in this action despite having been served with the summons and Complaint supports the Court's finding that Microsoft's claims are meritorious.

#### 3. The Sum of Money at Stake in the Action

Pursuant to *Eitel,* the Court considers the amount of money at stake in relation to the seriousness of Defendant's conduct. *See Philip Morris USA Inc.,* 219 F.R.D. at 500. The Copyright Act authorizes the Court to impose statutory damages for willful infringement up to $150,000 per infringed work. 17 U.S.C. § 504(c). Notwithstanding the evidence that Defendant's infringements were willful, Microsoft is seeking only the statutory maximum for non-willful infringement, a total of $30,000. (Mot. 4 (Dkt. No. 12) .) The Court finds that this sum is reasonable in relation to the seriousness of Defendant's conduct.

#### 4. The Possibility of a Dispute Concerning Material Facts

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.                    2

As discussed above, following entry of default, all factual allegations in the Complaint are taken as true, except those respecting damages. *See Derek Andrew, Inc.,* 528 F.3d at 702. Because Defendant has not appeared in the action and has filed no answer or response to the motion for default judgment, no factual disputes have been brought to the Court's attention. The exhibits on file with the Court show that Defendant was made aware of Microsoft's position as to the facts by both Microsoft's cease and desist letter and the Complaint. Defendant's silence supports the Court's finding that it is unlikely that genuine issues exist as to any material facts.

### 5. Whether the Default Was Due to Excusable Neglect

Again, Defendant received notice of Microsoft's intention to pursue civil remedies both through receipt of the cease and desist letter and service of the Complaint. Given the amount of time that has elapsed since the filing of the Complaint in December 2008, and Microsoft's numerous attempts to notify Defendant of his potential liability, the Court finds no evidence of Defendant's excusable neglect.

### 6. The Strong Policy of the Federal Rules Favoring a Decision on the Merits

As other courts have noted, "the mere existence of FED. R. CIV . P. 55(b) indicates that [this] *Eitel* factor is not alone dispositive." *Philip Morris USA Inc.,* 219 F.R.D. at 501. Defendants' failure to oppose the instant motion, or to answer the Complaint, or otherwise appear in this action, prevents adjudication on the merits.

**\*4** Accordingly, the Court finds that the *Eitel* factors favor entry of a default judgment.

### B. Statutory Damages

Microsoft asks the Court to impose a statutory damages award of $30,000 for Defendant's copyright infringement. (Mot. 3-5 (Dkt. No. 12).) "Under the 1976 Copyright Act, the plaintiff may elect to recover either actual or statutory damages." *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir.1990); *see* 17 U.S.C. § 504(c)(1). "If statutory damages are elected, '[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.' " *Peer Int'l Corp.,* 909 F.2d at 1336 (*quoting Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984)). The statutory maximum for non-willful infringement is $30,000. 17 U.S.C. § 504(c)

(1). The Court finds that this is a reasonable and appropriate award, especially in light of the evidence that Defendant's infringements may have been willful, which, if proven, would entitle Microsoft to seek up to $150,000 in statutory damages.

### C. Injunctive Relief

Microsoft also asks that the Court issue a permanent injunction to prevent Defendant from infringing Microsoft's copyrights in the future. (Mot. 5 (Dkt. No. 12).) The Copyright Act provides that the Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The court's "discretion may often be appropriately exercised to issue a permanent injunction when liability has been established and a threat of continuing infringement exists." 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.06[B] (2008). Defendant's failure to cease and desist in response to Microsoft's letter or to defend himself in this action indicates to the Court that there is a high likelihood that Defendant will continue to inflict harm on Microsoft by infringing its copyrights absent an injunction.

The Court also finds that Plaintiff has met the traditional four-factor test for injunctive relief. *See eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (applying the test to injunctions issued under the Patent Act and indicating that the same considerations apply to injunctions issued under the Copyright Act). Microsoft has established that it suffered (1) an irreparable injury (2) that cannot be compensated adequately by remedies at law, such as monetary damages; (3) that the balance of hardships favors Plaintiff; and (4) that the public interest is not disserved by a permanent injunction. *Id.* The Court is persuaded that Defendant's infringements harm Microsoft's business reputation and goodwill such that Microsoft could not be made whole by a monetary award. (Compl. ¶ 30 (Dkt. No. 1 at 7).) In addition, Plaintiff stands to suffer further such damage through Defendant's continued unauthorized distribution of counterfeit software if an injunction does not issue, whereas the Court is unaware of any hardship to Defendant that would counterbalance this consideration. The public's interest is undoubtedly served by preventing Defendant from distributing deceptively counterfeit Microsoft software. Accordingly, the Court finds that injunctive relief is appropriate.

### IV. CONCLUSION

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

*Microsoft Corp. v. Lopez, Not Reported in F.Supp.2d (2009)*

**\*5** For the foregoing reasons, the Court hereby GRANTS Plaintiff Microsoft Corporation's Motion for Entry of Default Judgment and Permanent Injunction Against Defendant Fernando Lopez (Dkt. No. 12) as follows:

Defendant Fernando Lopez ("Defendant"), is liable to Microsoft for the infringement under the federal Copyright Act, 17 U.S.C. §§ 501 *et seq.,* resulting from his use in commerce of the copyrighted work TX 5-407-055 (Microsoft Windows XP). Therefore, the Court hereby ORDERS:

1. Microsoft is awarded judgment against Defendant, as follows:

| | |
|---|---|
| Statutory Damages | $30,000.00 |
| TOTAL JUDGMENT | $30,000.00 |

This judgment shall accrue interest, compounded annually, pursuant to 28 U.S.C. § 1961.

2. Defendant Fernando Lopez and his agents, servants, employees, representatives, successors, and assigns, and all those acting in concert or participation with him shall be, and hereby are, PERMANENTLY ENJOINED and restrained from:

(a) imitating, copying, or making any other infringing use or infringing distribution of the software and/or materials now or hereafter protected by the following copyright Certificate Registration Number: TX 5-407-055 (Microsoft Windows XP), in addition to any other items or works now or hereafter protected by any Microsoft copyright;

(b) using any simulation, reproduction, counterfeit, copy or colorable imitation of Microsoft's registered Trademarks, Service Mark or Copyright Registration Number, including, but not limited to, the registration number listed in paragraph (a) above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion or display of any software program, component, and/or item not authorized or licensed by Microsoft;

(c) using any false designation of origin or false or misleading description or false or misleading representation that can or is likely to lead the trade or public erroneously to believe that any software program, component or item has been manufactured, assembled, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved or authorized by or for Microsoft, when such is not true in fact;

(d) using reproductions, counterfeits, copies or colorable imitations of Microsoft's copyrighted and trademark protected software and other materials in the distribution, offering for distribution, circulating, sale, offering for sale, advertising, importing, promoting or displaying of any merchandise not authorized or licensed by Microsoft;

(e) using the names, logos or other variations thereof of any of Microsoft's copyright and/or trademark protected software in any of the defendants' trade or corporate names;

(f) engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to sue or to exploit, these trademarks, service mark, and/or copyrights;

**\*6** (g) trafficking, distributing or intending to distribute any counterfeit or illicit Microsoft Certificates of Authenticity or Certificate of Authenticity Labels or any Microsoft documentation or packaging; and

(h) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (g) above.

**IT IS SO ORDERED.**

Footnotes

1   In the instant motion, Microsoft does not seek damages arising from its Lanham Act and other common law claims. (Mot. 2 n. 1 (Dkt. No. 12).)

---

GETTY IMAGES' POST-HEARING BRIEF REGARDING PERMANENT INJUNCTION NO. 2:13-cv-00626 – Page 22

**End of Document**                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.                5

# MICROSOFT CORPORATION
## v.
# EEE BUSINESS INC., et al.

555 F.Supp.2d 1051
United States District Court,
N.D. California.

MICROSOFT CORPORATION, Plaintiff,

v.

EEE BUSINESS INC., d/b/a Ebuszone.com and
EBZ EBZ; Ming no SHang; Lifeng Wang, a/k/a Alice
Wang; Nancy Linker; and Does 1-5, Defendants.

No. C 07-01839 JSW.    |    May 5, 2008.

**Synopsis**

**Background:** Software manufacturer brought action alleging unauthorized importation of software that was manufactured and licensed for use abroad, and distribution of software to individuals and entities not qualified to use it without approval or authorization. Plaintiff brought motion for partial summary judgment.

**Holdings:** The District Court, Jeffrey S. White, J., held that:

[1] Court was bound to accept direct evidence of central facts in dispute at summary judgment even where no reasonable jury would have believed it;

[2] competitor who never responded to manufacturer's request for admissions had to be deemed to have admitted that test purchases from investigators of computer software manufacturer conclusively established that competitor was responsible for infringing copyright on manufacturer's software;

[3] distribution of copyrighted computer software to other than qualified users violated manufacturer's exclusive right to distribution;

[4] unauthorized importation of copyrighted computer software to United States that had been manufactured and licensed for exclusive use abroad, and clearly marked "Not for Resale," violated exclusive right of software manufacturer to distribute copies;

[5] competitor effectively circumvented technological measure in violation of Digital Millennium Copyright Act (DCMA);

[6] competitor had trafficked in counterfeit labels; and

[7] person who made substantial contribution to endeavors of corporation that infringed on copyright of computer software manufacturer, and who had knowledge of corporation's infringing conduct, was liable to manufacturer under theory of contributory copyright infringement.

Motion granted.

West Headnotes (10)

[1]    **Copyrights and Intellectual Property**
       👉 Other Works

       Digital Millennium Copyright Act (DCMA) prohibits unauthorized users or distributors from attempting to circumvent security features designed to protect access to copyrighted work. 17 U.S.C.A. § 1201(a)(2).

       1 Cases that cite this headnote

[2]    **Federal Civil Procedure**
       👉 Presumptions

       District court was bound to accept direct evidence of central facts in dispute at summary judgment, even where court found that no reasonable jury would have believed it. Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.A.

[3]    **Copyrights and Intellectual Property**
       👉 Discovery

       Competitor who never responded to manufacturer's request for admissions had to be deemed to have admitted that test purchases from investigators of computer software manufacturer conclusively established that competitor was responsible for infringing copyright on manufacturer's software; although competitor obtained new counsel after request had been served and competitor had intention to file motion to withdraw admissions, new counsel had been informed of request, no such motion had been filed, and determination of

WestLaw © 2013 Thomson Reuters. No claim to original U.S. Government Works.          1

Microsoft Corp. v. EEE Business Inc., 555 F.Supp.2d 1051 (2008)

whether to grant such motion was discretionary. 17 U.S.C.A. § 501; Fed.Rules Civ.Proc.Rules 36(a)(3), 36(b), 28 U.S.C.A.

**[4]    Copyrights and Intellectual Property**
👉 Other Works

Distribution of copyrighted computer software to other than qualified users violated manufacturer's exclusive right to distribution under Copyright Act. 17 U.S.C.A. §§ 106(3), 501(a).

**[5]    Copyrights and Intellectual Property**
👉 Other Works

Unauthorized importation of copyrighted computer software to United States that had been manufactured and licensed for exclusive use abroad, and clearly marked "Not for Resale," violated exclusive right of software manufacturer under Copyright Act to distribute copies. 17 U.S.C.A. § 602(a).

**[6]    Copyrights and Intellectual Property**
👉 Other Works

Competitor effectively circumvented technological measure to control access to copyrighted computer software that was available only under volume license agreement, which permitted only authorized licensees to install software to unlock media programming to enable user to enter 25 character alphanumeric code that was to be unique to licensee and was required to be kept confidential under terms of agreement by distributing code without authorization, in violation of Digital Millennium Copyright Act (DCMA). 17 U.S.C.A. § 1201(a)(2); 18 U.S.C.A. § 2318(a)(1)(B), (b)(1).

2 Cases that cite this headnote

**[7]    Copyrights and Intellectual Property**
👉 Other Works

Competitor had trafficked in counterfeit labels in violation of Digital Millennium Copyright Act (DCMA) by placing 25 character alphanumeric

code that was to be unique to licensee and was required to be kept confidential under terms of volume license agreement on counterfeit label that accompanied volume license versions of copyrighted computer software that competitor sold. 17 U.S.C.A. § 1201(a)(2).

1 Cases that cite this headnote

**[8]    Copyrights and Intellectual Property**
👉 Persons Liable

Person who made substantial contribution to endeavors of corporation that infringed on copyright of computer software manufacturer, and who had knowledge of corporation's infringing conduct, was liable to manufacturer under theory of contributory copyright infringement under the Copyright Act. 17 U.S.C.A. § 101 et seq.

**[9]    Copyrights and Intellectual Property**
👉 Persons Liable

One who induces, causes, or materially contributes to the infringing conduct of another, with knowledge of the copyright infringing activity, may be held liable under the Copyright Act as a contributory infringer. 17 U.S.C.A. § 101 et seq.

**[10]    Copyrights and Intellectual Property**
👉 Persons Liable

An individual may be liable for contributory copyright infringement under the Copyright Act even where she does not have actual knowledge of the infringing activity, but should have reason to know of the infringing conduct. 17 U.S.C.A. § 101 et seq.

**Attorneys and Law Firms**

***1053** Esha Bandyopadhyay, Perkins Coie LLP, Menlo Park, CA, Jeremy E. Roller, Scott T. Wilsdon, Sima F.

GETTY IMAGES' POST-HEARING BRIEF REGARDING PERMANENT INJUNCTION NO. 2:13-cv-00626 – Page 26

Microsoft Corp. v. EEE Business Inc., 555 F.Supp.2d 1051 (2008)

Sarrafan, Yarmuth Wilsdon Calfo PLLC, Fourth & Madison, Seattle, WA, for Plaintiff.

Jingming James Cai, Judith Pearce, Schein & Cai LLP, Charles Michael Standard, Santa Jose, CA, Leon Emmanuel Jew, Dahyee Law Group, Andree Desam Taylor, Hayward, CA, for Defendants.

**Opinion**

### ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

JEFFREY S. WHITE, District Judge.

Now before the Court is the motion for partial summary judgment filed by Plaintiff Microsoft Corporation ("Microsoft") against defendant Lifeng Wang, a/k/a Alice Wang ("Wang") for dismissal of claims one through four of the complaint for damages and injunctive relief. Having carefully considered the parties' papers, oral argument, and the relevant legal authority, the Court hereby GRANTS Microsoft's motion for partial summary judgment.

### BACKGROUND

Defendant Wang was previously arrested for selling counterfeit Microsoft software, conduct which resulted in her prosecution, a sentence of two months in prison and an order to pay restitution in the amount $93, 611. (*See* Declaration of Deborah M. Johnson "(D. Johnson Decl."), Ex. 1, Wang Tr. Ex. 7.) Wang was also civilly sued by Microsoft for copyright infringement and defendant settled that action in June 2006 for a large payment and her agreement to refrain from further acts of infringement. (*See id.,* Wang Tr. Exs. 8, 9.)

Despite this prior conduct, Microsoft alleges in this lawsuit that defendant Wang is again liable for infringing its copyrighted works by setting up and running EEE Business, an on-line business that sold infringing Microsoft products. (*See id.,* Wang Tr. 28:19-29:2, 46:9-25, 60:5-17, 61:11-62:7, 70:21-71:15, 74:5-17, 76:8-77:15, 112:17-113:11, 114:19-116:10, 130:17-25, 132:21-133:24; Exs. 18, 36, 38.) **\*1054** Wang set up many aspects of the business enterprise, including leasing office space, renting a mail box used by the business, opening and managing tow Bank of America bank accounts for the business, opening and running a PayPal account for the business, and applying for a credit card merchant account.

(*See id.,* Wang Tr. 119:21-120:23, 58:11-60:4, 69:7-70:25, 81:21:82:1, 63:21-64:14, 112:17-113:11; Exs. 39, 36, 18, 19, 26, 17.) Wang performed these acts by holding herself out as an officer, manager, and majority shareholder of EEE Business. (*See id.,* Wang Tr. 96:15-98:1, 100:5-9, 112:17-113:11, 115:11-116:10, 119:21-120:9; Exs. 32-33, 36, 38-29.)

Defendants' infringing activities came to the attention of law enforcement and on May 16, 2007, United States Probation arrested Wang for multiple violations of her supervised release. (*See id.,* Wang Tr. 122:20-124:25; Ex. 40.) Law enforcement searched her home and seized infringing Microsoft software worth $106,145. (*See id.,* Wang Tr. 125:15-25; Ex. 42.) She was returned to prison and faces deportation for her trafficking in counterfeit Microsoft products. (*See id.,* Wang Tr. 123:4-7, 37:7-38:5, 40:23-41:1; Ex. 40.)

Microsoft and its partners distribute software called Student Media through special academic programs to provide low cost software to students currently enrolled in kindergarten through twelfth grade. (Complaint at ¶ 14.) Microsoft distributes the program to students in the United States and abroad, and imposes geographical restrictions on its distribution. (*Id.* at ¶¶ 14, 16.) In addition, only certain resellers who are specially trained and authorized may distribute Student Media to qualified education users. (*Id.* at ¶ 15.) Microsoft also develops, distributes and licenses other software packages, including Microsoft Windows XP, an operating system, and Microsoft Office 2003, a suite of popular Microsoft software programs. (*Id.* at ¶¶ 17-18.)

Microsoft brought this civil action against defendant Wang, EEE Business, and a few individuals for unauthorized importation into the United States of Microsoft Student Media software that was manufactured and licensed for use abroad, and distributing Student Media to individuals and entities not qualified to use the software, without approval or authorization. (*Id.* at ¶ 19.) On six separate occasions, investigators hired by Microsoft placed orders for various Microsoft software products and, upon receipt, determined that the products were infringing on its exclusive copyrights.

Microsoft brings this motion for partial summary judgment to establish liability by defendant Wang for copyright infringement, infringing importation of copyrighted works, violation of the Digital Millennium Copyright Act and violation of the Anti-Counterfeiting Amendments Act.

GETTY IMAGES' POST-HEARING BRIEF REGARDING PERMANENT INJUNCTION

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

## ANALYSIS

### A. Legal Standard for Motions for Summary Judgment.

A court may grant summary judgment as to all or a part of a party's claims. Fed.R.Civ.P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. **\*1055** *Id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### B. Legal Standard for Counts Microsoft Moves Upon.

Pursuant to Federal Rule of Civil Procedure 56, Microsoft seeks summary judgment as to defendant Wang's liability for (1) copyright infringement pursuant to 17 U.S.C. § 501; (2) unauthorized importation of copyrighted works pursuant to 17 U.S.C. § 602(a); (3) unauthorized distribution of product keys pursuant to 17 U.S.C. § 1201(a)(2); and (4) trafficking in counterfeit volume license key labels pursuant to 18 U.S.C. § 2318(a).

The Copyright Act grants the copyright owner several exclusive rights, including the exclusive right to distribution. 17 U.S.C. § 106(3). In addition, the Copyright Act provides that it is an unlawful infringement of a copyright owner's rights to import into the United States copyrighted works acquired abroad without the copyright owner's authority. 17 U.S.C. § 602(a). To establish a claim for copyright infringement, a plaintiff need only show that (1) it owns valid copyrights in the works at issue, and (2) defendant encroached upon plaintiff's exclusive rights under the Copyright Act. 17 U.S.C. § 501; *see also Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

The Copyright Act further protects a copyright owner's exclusive right of distribution by prohibiting the importation into the United States of a copyrighted work that was acquired outside the United States unless the copyright owner grants specific authority to do so. 17 U.S.C. § 602(a) ( "Importation into the United States, without authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive rights to distribute copies or phonorecords under section 106, actionable under section 501.").

 [1]    Federal law also prohibits trafficking in "counterfeit or illicit" labels affixed or designed to be affixes to copies of computer programs. 18 U.S.C. § 2318(a). Moreover, the Digital Millennium Copyright Act ("DCMA") prohibits the distribution **\*1056** of items (a) primarily designed or produced for the purpose of circumventing technological measures that effectively control access to a copyrighted work, (b) have only a limited commercially significant purpose or use other than to circumvent such technological measures, or (c) are marketed for use in circumventing such technological measures. 17 U.S.C. § 1201(a)(2). In conjunction, these federal statutes provide copyright owners protection against unauthorized users or distributors who attempt to circumvent security features designed to protect

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.                    4

access to the copyrighted work. *See, e.g., 321 Studios v. MGM Studios, Inc.,* 307 F.Supp.2d 1085, 1099 (N.D.Cal.2004) (holding that software used to circumvent encryption features used by copyright owner to protect unauthorized access to its DVDs key violates 17 U.S.C. § 1201(a)(2)).

### C. Wang's Declaration Does Not Establish Liability for Direct Infringement.

 [2]   Microsoft contends that Defendant EEE Business, Inc.'s distribution of Microsoft Student Media software to other than qualified educational users violates Microsoft's exclusive right of distribution under the Copyright Act, and that defendant Wang, as an instrumental part of that organization, is similarly liable. Microsoft argues that the test purchases of the software from EEE Business establishes that the company plainly infringed on Microsoft's copyrights and that defendant Wang was actively engaged in and directly caused such infringement. Microsoft contends that Wang's participation included leasing the Santa Clara office space for the company, renting the private mail box in Milpitas, opening the PayPal account, opening company accounts at Bank of America, applying for a credit card merchant account, preparing an application to be a reseller with a company called Micro, purchasing telephone equipment, and hiring a public accountant.

On the lease for the office space, Wang identified herself as "President" of EEE Business and provided a personal guaranty of the company's rental obligation. (*See* D. Johnson Decl., Ex. 1, Wang Tr. Ex. 39.) Wang signed the rental agreement for the mail box on behalf of EEE Business and the mail box was used by the business in the sales of infringing software to Microsoft's investigators. (*See id.,* Wang Tr. Ex. 14; Exs. 11, 12; ¶¶ 10-11, 20-21, Wang Exs. 3-4, 8-9; Wang Tr. Exs 19, 26.) The PayPal account is in Wang's name and lists her personal information, including her residence, cellular telephone number and credit card numbers. (*See id.,* Wang Tr. Ex. 17.) The PayPal account processed $1,400,199.08 in revenues for EEE Business. (*See id.*) The Bank of America accounts list both Wang's private residence and the Milpitas mail box as account addresses, Wang had signature authority over both accounts and signed the checks drawn on both accounts. (*See id.,* Wang Tr. 71:12-15, 72:13-16, Ex. 19; Wang Tr. 81-21-82:1, Ex. 26; Wang Tr. 76:8-77:10, Ex. 18.) On the application for the credit card merchant account, Wang lists herself as "President" of EEE Business and identifies herself as the majority owner of the company. (*See id.,* Wang Tr. Ex. 36.) On the reseller application form, Wang listed herself as "President" of EEE

Business and claimed to own 90 percent of the company. (*See id.,* Wang Tr. Ex. 38.) On the forms to purchase the telephone equipment, Wang again listed herself as "President" and "Manager" of EEE Business. (*See id.,* Wang Tr. Ex. 32.) Wang represented herself as "Manager" of EEE Business on the engagement letter for a CPA she met with for the purpose of preparing tax and other financial information for the company. (*See id.,* Wang Tr. 100:5-9, Ex. 33.) In addition, the uncontroverted **\*1057** evidence demonstrates that Wang withdrew over $470,000 form the two accounts. (*See id.,* Wang Tr. 87:7-90:23, 91:9-94:7, Exs. 29, 30.) Lastly, Wang held herself out as the "C.E.O." of EEE Business on her business card. (*See id.,* Wang Tr. Ex. 4.)

However, in her declaration in opposition to the pending motion for partial summary judgment, Wang states that she was only involved in setting up the infrastructure of the company and the business service providers required that she represent that she was either a manager, president or CEO and/or that she had a controlling interest in the corporation. (*See* Declaration of Lifeng Wang in opposition to motion for partial summary judgment ("Wang Decl."), ¶ 10.) Although Wang does not dispute that she represented herself as the president and manager to various providers, she states that she was not actually the manager, and that she was "just setting up the infrastructure for the corporation to conduct business." (*Id.,* ¶ 44.)

Microsoft contends that summary judgment should still be granted on the basis that Wang encroached upon Microsoft's exclusive and valid copyright rights. *See* 17 U.S.C. § 501. Microsoft argues that this Court should consider Wang's declaration to be a "sham affidavit," that fails to satisfy the admissible evidence requirement under Federal Rule of Civil Procedure 56(e) and should therefore be disregarded. Microsoft contends that considering the uncontroverted evidence that Wang is a convicted seller of counterfeit and infringing Microsoft software, that similar software was found in her residence during her supervised release and that she represented multiple times that she was a president or manager of the company, her affidavit in defense of their motion should be disregarded as incredible.

Under the Seventh Circuit's holding in *Seshadri v. Kasraian,* 130 F.3d 798, 802 (7th Cir.1997), the court held that although a court ordinarily does not make credibility findings at summary judgment, "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it." However, under Ninth Circuit authority,

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.          5

Microsoft Corp. v. EEE Business Inc., 555 F.Supp.2d 1051 (2008)

this Court is bound to accept direct evidence of the central facts in dispute at summary judgment, even where the Court finds that no reasonable jury would believe it. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999). Although the Court questions the veracity of the declaration considering the rest of the evidence in the record, Wang explained that she lied to all service providers about her status in the company because it was only she who could set up the EEE Business accounts. (*See* Wang Decl., ¶¶ 10, 44.) Under prevailing Ninth Circuit law, the Court is bound to accept the truth of Wang's declaration at summary judgment and therefore cannot find that she is directly liable for copyright infringement on this basis.

### D. Defendant's Admissions Establish Liability.

[3]   On November 30, 2007, Microsoft issued its first set of Requests for Admission. (*See* D. Johnson Decl., Ex. 2.) Although Wang was represented by counsel at the time, Wang did not respond to the Admissions. In her declaration filed in support of her opposition, Wang contends that she never admitted to the admissions and, although her previous attorney was served with the Requests for Admissions, that attorney never forwarded the requests to her current attorney. (*See* Wang Decl., ¶¶ 46-48.) Wang states that her new attorney was never informed by Microsoft of the outstanding discovery. (*See id.*, ¶ 49.) However, it is clear from Microsoft's submissions on reply that Microsoft **\*1058** repeatedly informed Wang's new attorney of the outstanding Requests for Admission and of the deadline to answer. On December 7, 2007, the day after Wang's current attorney was retained, Microsoft sent counsel a letter outlining the discovery requests that had been made to date and specifically notified counsel of the impending January 2, 2008 deadline for answers for the first set of Requests. (*See* Declaration of Scott T. Wilsdon, ¶ 2.) On December 27, 2007, Microsoft again notified Wang's new counsel of the January 2, 2008 deadline to answer the pending Requests. (*See id.*, ¶ 4, Ex. 3.) In addition, as of March 10, 2008 when Microsoft filed its opening brief of the motion for partial summary judgment premised, in part, on Wang's admissions by failure to respond to the Requests, Wang has had notice of her failure to answer the Requests. Although there is some mention of her intention to file a motion to withdraw the admissions in the parties' joint case management statement filed before this Court and although defendants' counsel was queried at oral argument about filing such a motion, to date, no such motion has been filed.

Pursuant to Federal Rule of Civil Procedure 36(a)(3), a "matter is deemed admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Further, a "matter deemed admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn." Fed.R.Civ.P. 36(b); *see also Conlon v. United States*, 474 F.3d 616, 622 (9th Cir.2007). Because there is no motion to withdraw the admissions, and the determination whether to grant such a motion is discretionary, the Court deems those matters admitted.

[4]   Accordingly, Wang is deemed to have admitted that the test purchases from Microsoft's investigators conclusively establish that Wang was responsible for infringing Microsoft Student Media and Volume License Media software. (Declaration of Tamara Johnson ("T. Johnson Decl."), ¶¶ 8-10, 15, 20-21.) Defendants' distribution of Microsoft software to other than qualified users violates Microsoft's exclusive right to distribution under the Copyright Act. *See* 17 U.S.C. §§ 106(3), 501(a). The evidence from the six test purchases of Microsoft software establishes that defendant Wang distributed Student Media versions of Microsoft Window XP as well as Microsoft Volume License software and deposited the revenues into the EEE Business operating account. (*See* T. Johnson Decl., ¶¶ 8-11, 19-21, Exs. 1-4, 8-9; Wang Admissions at 4, 5, Nos. 1-6.) This distribution of software without authorization plainly violates Microsoft's exclusive right to distribution under 17 U.S.C. § 501. Accordingly, the undisputed facts establish that defendant Wang is liable for infringement of Microsoft's copyrights.

[5]   Wang's admissions regarding the test purchases further establish that defendants import and/or distribute Microsoft software manufactured and licensed for distribution abroad. Section 602(a) of the Copyright Act provides that "[i]mportation into the United States, without the authority of the owner of copyright under this title, of copies ... of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies ... under section 106, actionable under section 501." 17 U.S.C. § 602(a). The evidence in the record establishes that the Student Media software was imported and distributed within the United States without Microsoft's authority and that defendants were not authorized **\*1059** to import or export to the United States software that was licensed for distribution abroad. (*See* T. Johnson Decl., ¶ 14.) In addition, the discs

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.     6

were clearly marked "Not for Resale." (*See id.,* ¶¶ 8-11, Exs. 1-4.) Defendants' importation to the United States of software manufactured and licensed for exclusive use abroad is a plain violation of 17 U.S.C. § 602(a). Accordingly, the undisputed facts establish that defendant Wang is liable for infringing importation of Microsoft's copyrighted works.

 [6]  [7]  Lastly, among the works defendant Wang sold to Microsoft's outside investigators were software only available under a Volume License Agreement. This agreement permitted only authorized licensees to install software to unlock the media programming to enable the user to enter a 25-character alphanumeric code-the Volume License Key-which is unique to the licensee and required to be kept confidential under the terms of the Volume License Agreement. (*See id.,* ¶¶ 17-18.) By distributing a VLK without authorization, Wang effectively circumvented Microsoft's technological measure to control access to a copyrighted work in violation of the DCMA. *See* 17 U.S.C. § 1201(a)(2). Additionally, the VLK's placement on a counterfeit label which accompanied the Volume License versions of the Windows XP and Office 2003 software that Wang sold to Microsoft's investigators constitutes trafficking in counterfeit labels. *See* 18 U.S.C. § 2318(a)(1)(B), (b)(1). (*See also* T. Johnson Decl., ¶¶ 20-21.)

Accordingly, pursuant to her uncontested admissions, Wang is liable for copyright infringement, unauthorized importation of copyrighted works, unauthorized distribution of product keys, and trafficking in counterfeit volume license key labels. Microsoft is entitled to summary judgment on counts one through four on this basis.

### E. Defendant is Liable for Contributory Infringement.

 [8]  [9]  [10]  In addition, even without considering defendant's admissions from the unanswered Requests for Admission, according to the undisputed facts in the record, Wang is liable for copyright infringement and the attendant causes of action because of her conduct contributing to the infringement. "Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable." *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir.1996). "[O]ne who, with knowledge of the infringing activity, induced, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Id.,* quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). An individual may be

liable for contributory infringement even where she does not have actual knowledge of the infringing activity, but should have reason to know of the infringing conduct. *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 845-46 (11th Cir.1990).

The undisputed facts establish that Wang was aware of EEE Business and its infringing activity. (*See* D. Johnson Decl., Ex. 1, Wang Tr. 22:14-19). Wang does not contest that she was instrumental in the procurement of leasing space of the company, renting a private mail box, opening a PayPal account in her name which was used to receive payment for the sale of infringing Microsoft products, opening Bank of America accounts for the company, applying for a credit card merchant account, registering EEE Business as a reseller for a business partner, purchasing telephone equipment for the business and hiring a CPA to prepare tax returns for the company. Given this substantial contribution to the endeavors of EEE Business, **\*1060** and considering her knowledge of the company's infringing conduct, the Court finds her liable on a theory of contributory infringement. Accordingly, Microsoft is entitled to partial summary judgment on counts one through four on this basis. *See, e.g., Microsoft Corp. v. Silver Star Micro, Inc.,* 2008 WL 115006, at \*8 n. 8 (N.D.Ga. Jan.9, 2008) (citing *Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir.2004)) (holding that the court analyzes contributory and vicarious liability under the DCMA in the same manner as determining personal liability for violations of the Copyright Act.)

### F. Microsoft is Entitled to a Permanent Injunction.

Accordingly, pursuant to Federal Rule of Civil Procedure 56 and 17 U.S.C. § 502(a), 17 U.S.C. § 1203(b)(1) and 18 U.S.C. § 2318(f) (2)(A), the Court finds that Microsoft is entitled to a permanent injunction as follows: The Court ORDERS that defendant Wang, along with her agents, servants, employees, representatives, successors, assigns, and all those persons acting at her direction or control, shall be and hereby are permanently enjoined and restrained from:

(a) importing to or distributing within the United States any Microsoft software programs (including but not limited to Student Media), components, end user license agreements, or any other items protected by Microsoft's copyrights, including, but not limited to, the following Certificate Registration Numbers:

(i) TX 5-407-055 ("Microsoft Windows XP");

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

(ii) TX 5-837-617 ("Microsoft Office 2003");

(iii) TX 5-872-225 ("Microsoft Access 2003");

(iv) TX 5-837-636 ("Microsoft Excel 2003");

(v) TX 5-900-087 ("Microsoft Outlook 2003");

(vi) TX 5-852-649 ("Microsoft PowerPoint 2003");

(vii) TX 5-900-088 ("Microsoft Word 2003"); and

(viii) Other items or works protected by Microsoft's copyrights; manufactured abroad and license for exclusive distribution outside the United States;

(b) distributing or making any other infringing use of Microsoft Student Media software protected by Microsoft's copyrights, including, but not limited to the following Certificate Registration Numbers:

(i) TX 5-407-055 ("Microsoft Windows XP");

(ii) TX 5-837-617 ("Microsoft Office 2003");

(iii) TX 5-872-225 ("Microsoft Access 2003");

(iv) TX 5-837-636 ("Microsoft Excel 2003");

(v) TX 5-900-087 ("Microsoft Outlook 2003");

(vi) TX 5-852-649 ("Microsoft PowerPoint 2003");

(vii) TX 5-900-088 ("Microsoft Word 2003"); and

(viii) Other items or works protected by Microsoft's copyrights;

(d) importing to the United States, offering to the public, providing and trafficking in counterfeit and/or unauthorized Microsoft product keys, knowing or having reason to know that such product keys (i) are primarily designed or produced for the purpose of circumventing activation and/or validation features of Microsoft software, (ii) have only limited commercially significant purpose or use other than to circumvent Microsoft's activation and/or validation **\*1061** features, or (iii) are marketed by defendant Wang or persons acting in concert with defendant Wang for use in circumventing Microsoft's activation and/or validation features;

(e) trafficking, distributing or intending to distribute any counterfeit or illicit Microsoft Certificates of Authenticity, VLK labels, other product key labels, or any Microsoft documentation or packaging; and

(F) assisting, aiding, abetting any other person or business entity in engaging in or performing any of the activities referred to in numbered paragraphs (a) through (e) above.

In addition, pursuant to Federal Rule of Civil Procedure 56 and 17 U.S.C. § 503(b), to prevent further unauthorized distribution of Microsoft software, the Court finds that Microsoft is entitled to an order authorizing the remedial destruction of the infringing Microsoft software seized from defendant Wang by the United States Probation Department.

**IT IS SO ORDERED.**

---

**End of Document**                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.                    8

# DFSB KOLLECTIVE CO., LTD., et al.
## v.
## BING YANG, et al.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DFSB KOLLECTIVE CO., LTD.; NEGA NETWORK; JUNGLE ENTERTAINMENT; FOUNDATION RECORDS; WOOLIM ENTERTAINMENT; AFTERMOON MUSIC ENTERTAINMENT, INC.; PARAGON MUSIC CORP.; ROXTA MUSIC; and SPOT/MONKY GLOBAL, | No. C 11-1051 CW PERMANENT INJUNCTION |

        Plaintiffs,

      v.

BING YANG; INDRAWATI YANG; and JOHN DOES 3-10,

        Defendants.

_____/

    Pursuant to this Court's Order Declining to Adopt the Magistrate Judge's Report and Recommendation and Granting Plaintiffs' Motion for Default Judgment, a permanent injunction is entered against Defendants Bing Yang, also known as Yang Bing, Duong Bang, Dinh Duong and Dinh Bang and doing business as kpopexplorer.wordpress.com and bingyang.co.cc, and Indrawati Yang, also known as Indra Yang, Indrawati and mocchalee and doing business as asianloud.co.cc, asianloud.net, koreanmusicswave.blogspot.com, ikpooop.blogspot.com, kpopsounds.blogspot.com, koreanmusicdownload.blogspot.com and kpopsounds.blog127.fc2.com, as follows:

    Defendants and their agents, servants, employees and all persons in active concert and participation with either Defendant who receive actual notice of the injunction are hereby restrained and enjoined from:

a) Infringing the DFSB Plaintiffs' Works, either directly or secondarily, in any manner, including generally;

b) Copying, reproducing, distributing, advertising, publicly performing, and/or publicly displaying the DFSB Plaintiffs' Works, without authorization from the DFSB Plaintiffs, specifically including, but not limited to:

   i.   Posting images of any album cover art from any of the DFSB Plaintiffs' Works on any website(s), forum(s), blog(s), social networking platform(s), video site(s), online storage locker(s), or any other online platforms;

   ii.   Uploading any of the DFSB Plaintiffs' Works to any website(s), forum(s), blog(s), social networking platform(s), video site(s), online storage locker(s), or any other online platforms;

   iii.   Streaming any of the DFSB Plaintiffs' Works on any website(s), forum(s), blog(s), social networking platform(s), video site(s), online storage locker(s), or any other online platforms; and

   iv.   Offering for download any of the DFSB Plaintiffs' Works on any website(s), forum(s), blog(s), social networking platform(s), video site(s), online storage locker(s), or any other online platforms;

c) Contributing to, assisting, aiding, abetting, or facilitating the copying, reproduction, distribution, advertisement, public performance, and/or public display of the DFSB Plaintiffs' Works, specifically including, but not limited to:

   i.   Compiling, organizing, and/or posting links to any website(s), forum(s), blog(s), social networking platform(s),

video site(s), online storage locker(s), or any other online

platforms which offer unauthorized copies of the DFSB Plaintiffs'

Works for download;

ii. Compiling, organizing, and/or posting links to any

website(s), forum(s), blog(s), social networking platform(s),

video site(s), online storage locker(s), or any other online

platforms which offer unauthorized copies of the DFSB Plaintiffs'

Works for streaming; and

iii. Providing instructions and/or answering questions on how

to find, download, and/or stream unauthorized copies of the DFSB

Plaintiffs' Works;

d) Inducing the copying, reproduction, distribution,

advertisement, public performance, and/or public display of the

DFSB Plaintiffs' Works, specifically including, but not limited

to:

i. Compiling, organizing, and/or posting links to any

website(s), forum(s), blog(s), social networking platform(s),

video site(s), online storage locker(s), or any other online

platforms which offer unauthorized copies of the DFSB Plaintiffs'

Works for download;

ii. Compiling, organizing, and/or posting links to any

website(s), forum(s), blog(s), social networking platform(s),

video site(s), online storage locker(s), or any other online

platforms which offer unauthorized copies of the DFSB Plaintiffs'

Works for streaming;

iii. Providing instructions and/or answering questions on how

to find, download, and/or stream unauthorized copies of the DFSB

Plaintiffs' Works; and

United States District Court
For the Northern District of California

iv.   Encouraging, enticing, persuading, and/or intending any third-parties to engage in any form of infringement of the DFSB Plaintiffs' Works, including those other acts proscribed herein.

IT IS SO ORDERED.

Dated:  3/28/2013

CLAUDIA WILKEN
United States District Judge