UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GETTY IMAGES (US), INC., | CASE NO. C13-0626JLR |
| Plaintiff, | ORDER AWARDING STATUTORY DAMAGES AND ENTERING PERMANENT INJUNCTION |
| v. | |
| VIRTUAL CLINICS, et al., | |
| Defendants. | |

## A. INTRODUCTION

The court ordered default judgment against Defendants Kendra and Ryan Camp ("the Camps") on January 31, 2014, and awarded Plaintiff Getty Images (US), Inc. ("Getty") $21,433.00 in actual damages under 17 U.S.C. § 504(b) and prejudgment interest for the Camps' infringement of ten unregistered images.  (*See* 1/31/14 Ord. (Dkt. # 40).)  Getty also requested maximum statutory damages for infringement of two

1  registered images and a permanent injunction against the Camps.  (*See id.*)  After

2  considering the evidence presented at a February 25, 2014, evidentiary hearing on these

3  requests, Getty's post-hearing briefing (*see* Brief (Dkt. # 46)), and the relevant law, the

4  Court awards Getty maximum statutory damages of $300,000.00 under 17 U.S.C.

5  § 504(c)(2) for the Camps' willful copyright infringement and ENJOINS the Camps from

6  engaging in future infringing activity.

7                              **B.  BACKGROUND**

8          Getty controls the intellectual property rights to numerous pictures of cats and

9  dogs, 12 of which are at issue in this case.  (Compl. (Dkt. # 1) ¶¶ 22-23.)  Getty owns

10  some of the images it licenses and also acts as a distributor for third-party content

11  suppliers.  (*Id.* ¶ 14.)  As Getty explained at the evidentiary hearing, Getty licenses

12  images under different pricing structures.  Getty customers who license rights-managed

13  images have exclusive use and control of those images.  Rights-managed images are

14  often used by companies for major advertising campaigns, and customers pay a higher

15  premium for the exclusivity associated with this model.

16          The Camps are a Florida couple who run a website design company from their

17  home.  (Camp Decl. (Dkt. # 16) ¶ 2.)  They design websites for veterinarians and

18  veterinary clinics, doing business as "Vet Web Designers."[1]  (*Id.*)  They use pictures of

19  cats and dogs in the websites they design.

20

21  _____

22  [1] Getty names several other persons and entities as Defendants in this action, all of which
are associated in one way or another with the Camps and their online businesses serving the

1    Getty brought a single claim of copyright infringement against the Camps in April

2    2013,[2] alleging that the Camps used pictures of cats and dogs exclusively licensed to

3    Getty in designing websites for veterinarians.  (*See* Compl. ¶¶ 25, 33.)  Getty also alleged

4    that the Camps continued to use the images after they became aware of their

5    infringement.  (*Id.* at ¶ 34.)

6    The Camps moved to dismiss the case for lack of personal jurisdiction under

7    Federal Rule of Civil Procedure 12(b)(2) on June 3, 2013.  (*See* Mot. to Dismiss (Dkt.

8    # 15)): Fed. R. Civ. P. 12(b)(2).  Between the Camps' filing of that motion and the

9    court's order denying the motion on September 9, 2013, the Camps' attorney withdrew

10   from the case.  (*See generally* 7/19/13 Ord. (Dkt. # 21); 9/9/13 Ord. (Dkt. # 31).)  After

11   that point, the Camps stopped defending the action.  (*See generally* Dkt.)  The court

12   entered default against the Camps on October 15, 2013.  (10/15/13 Ord. (Dkt. # 34).)

13   Getty subsequently moved for default judgment, and on January 31, 2014, the

14   court ordered default judgment against the Camps, and awarded Getty actual damages of

15   $21,433.00 and prejudgment interest for copyright infringement of ten unregistered

16   images.  (*See generally* Mot. for Def. Judg. (Dkt. # 35); 1/31/14 Ord.)  The court also

17   ordered an evidentiary hearing to determine the appropriate amount of statutory damages

18   for willful copyright infringement of two registered images under 17 U.S.C. § 504(c)(2)

19

20   veterinary community.  (*See* Compl. ¶¶ 3-8.)  These persons and entities include Virtual Clinics,

21   Virtual Clinics US, Veterinary Web Designers, and several John Doe defendants.  (*See id.*)

22   [2] As the exclusive licensee of these images, Getty may bring copyright infringement
claims to protect the copyrights under 17 U.S.C. § 501(b).  *See* 17 U.S.C. § 501(b).

1  and whether the court should issue a permanent injunction.  (*See* 1/31/14 Ord.)  At the

2  conclusion of the evidentiary hearing on February 25, 2014, the court requested

3  additional briefing from Getty about the scope of Getty's proposed permanent injunction.

4  (*See generally* Brief.)

5  **C. STATUTORY DAMAGES UNDER 17 U.S.C. § 504(C)(2)**

6  The court finds that an award of maximum statutory damages of $300,000.00 for

7  the Camps' willful infringement is appropriate in this case.  The Camps infringed Getty's

8  copyrights with the knowledge that they were doing so, and saved expenses and

9  generated profit through their infringing use.  The Camps' actions also cost Getty revenue

10  it otherwise would have received had the two rights-managed images been properly

11  licensed to maintain their exclusivity.  Further, an award of maximum statutory damages

12  in this case will serve to protect the copyright system from flagrant violation of the law.

13  The court has wide discretion in determining the amount of statutory damages to

14  be awarded within the ranges provided by 17 U.S.C. § 504(c)(1)-(2).  *Harris v. Emus*

15  *Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  The court is directed to do "what is

16  just in the particular case, considering the nature of the copyright, the circumstances of

17  the infringement and the like . . . but with the express qualification that in every case the

18  assessment must be within the prescribed [statutory range].  Within these limitations the

19  court's discretion and sense of justice are controlling . . . ."  *F.W. Woolworth Co. v.*

20  *Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952) (citing *L.A. Westermann Co. v.*

21  *Dispatch Printing Co.*, 249 U.S. 100, 106-07 (1919)).  "Statutory damages are

22  particularly appropriate in a case . . . in which [a] defendant has failed to mount any

1    defense or to participate in discovery . . . ." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096,

2    1101 (N.D. Cal. 2003).  Further, "[b]ecause awards of statutory damages serve both

3    compensatory and punitive purposes, a plaintiff may recover statutory damages 'whether

4    or not there is adequate evidence of the actual damages suffered by plaintiff or of the

5    profits reaped by defendant.'" *L.A. News Serv. v. Reuters Television Intern., Ltd.*, 149

6    F.3d 987, 996 (9th Cir. 1998) (quoting *Harris*, 734 F.2d at 1335).  If a plaintiff

7    demonstrates that the infringer's conduct was willful, the court may award maximum

8    statutory damages of $150,000.00 per infringement.  *See* 17 U.S.C. § 504(c)(2).

9         In its order granting default judgment, the court stated that four factors would

10   inform its determination of the appropriate amount of statutory damages.  (1/31/14 Ord.

11   at 15-16.)  The factors are:  (1) the infringer's profits and expenses saved because of the

12   infringement; (2) the plaintiff's lost revenues; (3) the strong public interest in ensuring

13   the integrity of copyright laws; and (4) whether the infringer acted willfully.  *See, e.g.*,

14   *Pac. Stock, Inc. v. MacArthur & Co. Inc.*, Civil No. 11–00720 JMS/BMK, 2012 WL

15   3985719, at *5 (D. Haw. Sept. 10, 2012); *Controversy Music v. Shiferaw*, No. C03–5254

16   MJJ, 2003 WL 22048519, at *2 (N.D. Cal. Aug. 20, 2003); *Original Appalachian*

17   *Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987); *Rare Blue*

18   *Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1530 (D. Mass. 1985); *Milene Music, Inc.*

19   *v. Gotauco*, 551 F. Supp. 1288, 1296 (D.R.I. 1982).  The first two factors are largely

20   analogues of each other so the court will analyze them together.  The balance of factors

21   counsels in favor of granting Getty maximum statutory damages of $300,000.00.

22   //

### a.  The Camps' Profits and Expenses Saved, as well as Getty's Lost Revenue, Support a Heightened Statutory Damages Award

The first two factors—(1) the infringer's profits and expenses saved and (2) the plaintiff's lost revenues—are relatively straightforward inquiries.  However, these factors are generally given less weight than the others because of the inherent uncertainty in calculating an infringer's profits and a plaintiff's lost revenue.  *Milene Music*, 551 F. Supp. at 1296.  Indeed, "most courts that have pondered the issue do not attach great weight to profits gained or to income lost, because these amounts are difficult to monetize, and may be marginal at best."  *Id.*

In this case, the profits that the Camps made from their infringing conduct and the amount of revenue Getty has lost because of the Camps' activity are uncertain.  Getty has presented evidence that the Camps have made over $1 million from the websites they have designed and that $21,794.00 of that amount was directly attributable to five websites on which the Camps illegally posted the two images for which Getty seeks statutory damages.  (*See* Mot. for Def. Judg. at 16 (citing Houck Decl. (Dkt. # 24) ¶ 4).) The Camps' profits were not negligible, even if modest and uncertain.

Getty also conservatively estimates that its lost revenue and the licensing costs saved by the Camps are a relatively minor $4,655.00.  However, Getty contends that rights-managed images, like the two at issue here, are particularly subject to adverse commercial consequences when they are infringed because the images lose their exclusivity.  It is therefore possible that Getty lost additional revenue from customers who might have licensed these images or other rights-managed images, but did not do so

1   because Getty could not guarantee the images' exclusivity.  Therefore, although the lost

2   revenue and profits gained in this case seem to be relatively modest, the broader impact

3   of the Camps' infringement on Getty's revenue generation supports a heightened

4   statutory damages award.

5          These two factors, therefore, support a statutory damages award above the

6   statutory minimum, but do not on their own support a maximum statutory damages

7   award.  *See* 17 U.S.C. § 504(c)(1)-(2).  However, because there need not be "actual

8   evidence" of an infringer's profits or a plaintiff's losses for maximum statutory damages

9   to be appropriate, the court turns to the remaining two factors.  *See L.A. News*, 149 F.3d

10  at 996.

11  **b.    The Public's Strong Interest in Maintaining the Integrity of Copyright Laws
        Supports a Maximum Statutory Damages Award**

12

13         Under this factor, courts often evaluate the public's interest in ensuring the

     integrity of copyright laws by looking at the severity of the infringers' conduct.  If the

14   infringing conduct is severe, a court is more likely to award higher statutory damages

15   because the higher award will deter such conduct in the future.  *See, e.g.*, *Warner Bros.*

16   *Enter. v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004).  "An award of the

17   statutory maximum protects not only the copyrighted materials at issue, but also the

18   entire entrepreneurial system upon which [a copyright holder] relies."  *Teri Woods Pub.,*

19   *L.L.C. v. Williams*, No. 12-4554, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013).

20   "[C]ourts have repeatedly emphasized that defendants must not be able to sneer in the

21   face of copyright owners and copyright laws."  *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-

22

3822 (SLT) (RM), 2009 WL 2905780, at *6 (E.D.N.Y. Sept. 10, 2009) (quoting *N.Y.*

*Chinese TV Prog., Inc. v. U.E. Enter., Inc.*, No. 89 Civ. 6082RWS (KAR), 1991 WL

113283, at *4 (June 14, 1991)).  This factor dovetails with the "goal of discouraging

wrongful conduct." *Controversy Music*, 2003 WL 22048519, at *2 (citing *F.W.*

*Woolworth*, 344 U.S. at 233).

       In the present case, the Camps failed to end their infringement despite repeated

notifications of their infringing use and opportunities to settle the matter swiftly with

Getty.  (*See* Pinto Decl. (Dkt. # 36) at 13-22.)  Their infringing conduct is similar to that

in other cases in the Ninth Circuit where maximum statutory damages have been

imposed.  In *IO Group, Inc. v. Antelope Media LLC*, No. C-08-4050 MMC, 2010 WL

2198707, at *1-2 (N.D. Cal. May 28, 2010), the district court found maximum statutory

damages for copyright infringement appropriate where the defendants "gained

commercial advantage by using plaintiff's copyrighted works, specifically, by displaying

plaintiff's works on defendants' websites"; transferred "ownership of their websites to

fictitious names" after the suit was instituted; and precluded the "plaintiff from

determining [the] actual loss . . . incurred."  In addition, the district court in *Caridi*

imposed a maximum statutory damages award on the defendant in part because he failed

"to proffer any defense or participate in discovery or engage in settlement negotiations."

346 F. Supp. 2d at 1074.  The facts of these cases are similar to the one before the court.

The Camps similarly gained commercial advantage by using Getty's copyrighted works

on their websites, engaged in deception by using fictitious names, and failed to

participate beyond limited discovery early in the case.  (*See* Pinto Decl. at 13-22;

ORDER- 8

1  Wojtczak Decl. (Dkt. # 28) at 2.)  A maximum award of $300,000.00 alerts copyright

2  infringers that they may not "sneer in the face of . . . copyright laws" without facing

3  consequences.  *Tu*, 2009 WL 2905780, at *6.  Thus, it is in the public interest to protect

4  the copyright system by awarding Getty maximum statutory damages.

5  **c.    The Camps Acted Willfully in Infringing Getty's Copyrights**

6         Getty must show that the Camps' acted willfully such that their infringing conduct

7  occurred "with knowledge that [it] constituted copyright infringement."  *Danjaq LLC v.*

8  *Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001).  This factor is typically given the most

9  weight by courts in determining an appropriate amount of statutory damages.  *See Milene*

10 *Music*, 551 F. Supp. at 1296 ("Courts . . . have focused largely on the element of

11 intent . . . .").  "[T]he per-infringement award tends understandably to escalate, in direct

12 proportion to the blameworthiness of the infringing conduct."  *Id.*  "Where defendants

13 have ignored or disregarded notices of the need for licensing, willful infringement has

14 been found."  *Street Talk Tunes v. Vacaville Recreation Corp.*, No. CIV S-05-

15 2401FCDJFM, 2006 WL 2423429, at *2 (E.D. Cal. 2006).

16        At the evidentiary hearing, Getty provided substantial evidence that the Camps

17 were aware that their conduct infringed Getty's copyrights.  Getty first informed the

18 Camps of their infringing activity in 2007, and the Camps continued to infringe images

19 licensed exclusively to Getty, even after this suit was instituted in April 2013.  (Pinto

20 Decl. at 13-22.)  The Camps received notice of their infringement because "Abe

21 Goldstien," the Camps' purported attorney, responded to Getty at least 21 times to deny

22 that the Camps had engaged in any infringement.  (Wojtczak Decl. at 2.)  The Camps also

1    initially participated in the suit, moving to dismiss the case for lack of personal

2    jurisdiction.  (*See generally* Mot. to Dismiss.)  Therefore, the Camps knew by at least

3    2007 that they were infringing Getty's copyrights, but nevertheless continued their

4    infringement.  Such sustained violation of the law supports a maximum award.

5         For the reasons discussed above, the court in its discretion GRANTS Getty

6    $300,000.00 for the Camps' willful infringement of two registered copyrights.  An award

7    of maximum statutory damages is appropriate particularly because of the Camps' willful

8    conduct and the public interest in protecting copyrights against sustained infringement.

9    ### D.  PERMANENT INJUNCTION UNDER 17 U.S.C. § 502(A)

10        The Copyright Act authorizes a court to "grant temporary and final injunctions on

11   such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

12   17 U.S.C. § 502(a).  But "an injunction [does not] automatically follow[] a determination

13   that a copyright has been infringed."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

14   392 (2006).  "An injunction should issue only where the intervention of a court of equity

15   'is essential in order effectually to protect property rights against injuries otherwise

16   irremediable.'"  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting

17   *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  If granted, "[a] permanent injunction

18   must be carefully crafted," *Metro-Goldwyn-Mayer v. Grokster*, 518 F. Supp. 2d 1197,

19   1226 (C.D. Cal. 2007), and must be specific, Fed. R. Civ. P. 65(d).  Indeed, "'[i]njunctive

20   relief should be narrowly tailored to fit specific legal violations.'"  *Silicon Images, Inc. v.*

21   *Analogix Semiconductor*, 642 F. Supp. 2d 957, 966 (N.D. Cal. 2008) (quoting *Waldman*

22   *Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)).

1    Four factors govern a court's decision whether to grant a permanent injunction in a

2    copyright infringement case:  (1) whether the plaintiff has suffered irreparable injury; (2)

3    whether the plaintiff can be adequately compensated by a remedy at law such as

4    monetary damages; (3) whether the balance of hardships between the plaintiff and

5    defendant favors the plaintiffs; and (4) whether the permanent injunction will serve the

6    public.  *eBay*, 547 U.S. at 390.

7        Getty requests a permanent injunction because the Camps "failed to cease their

8    infringing activities," "employed deception in furtherance of their business," and

9    "encouraged harassment of Getty Images."  (Mot. for Def. Judg. at 19.)  Getty's

10   requested injunction in Part I enjoins the Camps from doing several acts:  (a)

11   "reproducing, distributing, displaying or making any other infringing uses" of the 12

12   images at issue in this case; (b) "modifying, altering or incorporating copyright-protected

13   elements" of the 12 images "in new works"; (c) infringing any other images owned or

14   licensed by Getty; and (d) "assisting, aiding or abetting any other person or entity in

15   engaging or performing any activities" listed above (*See* Prop. Inj. (Dkt. # 35-2) at 2-3).

16   The court finds that the four-part test supports granting permanent injunctive relief and

17   that Getty's proposed injunction is narrowly tailored to prevent the Camps from

18   continuing to infringe Getty's copyrights.  The court therefore adopts Getty's proposed

19   injunction in full at the end of this order.

20   **a.      Getty Has Suffered Irreparable Injury**

21       The first factor—irreparable harm—may be shown where there is "[j]eopardy to a

22   company's competitive position caused by copyright infringement," or where there is

1    "the threat of the loss of prospective customers, goodwill, or reputation . . . ." *Bean v.*

2    *Pearson Educ., Inc.*, No. CV 11–8030–PCT–PGR, 2011 WL 1211684, at *2 (D. Ariz.

3    Mar. 30, 2011); *accord Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.*,

4    240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers

5    or goodwill certainly supports a finding of the possibility of irreparable harm.").  Such

6    "intangible injuries are irreparable because quantifying their harm is impractical or

7    impossible, and . . . cannot be fully remedied with a financial award." *Bean*, 2011 WL

8    1211684, at *2.  Irreparable harm must be "real and significant, not speculative or

9    remote." *Id.*  There is no presumption of irreparable harm just because a copyright has

10   been infringed. *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995 (9th

11   Cir. 2011).

12        Getty has suffered irreparable harm in this case.  As discussed above, the 12 images

13   the Camps have infringed are rights-managed images, which require exclusivity.  Getty

14   has demonstrated that it faces a potential loss of customers, goodwill, and reputation from

15   the Camps' threat to Getty's exclusivity.  (Compl. ¶ 37 ("[D]efendants' infringements

16   interfere with Getty Images' goodwill and customer relations.").)  These intangible

17   injuries support a finding of irreparable harm and enjoining the Camps from future

18   infringing activity.

19   **b.      Getty Cannot Be Adequately Compensated by a Remedy at Law**

20        For the second factor, the plaintiff must show that "remedies available at law, such

21   as monetary damages, are inadequate to compensate for the injury." *eBay*, 547 U.S. at

22   391.  "[T]he requisite analysis for [this] factor . . . inevitably overlaps with that of the

1  first . . . . ”  *MercExchange L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va.

2  2007).  A remedy may be inadequate if it cannot be collected because of insolvency or if

3  obtaining the remedy would require a “multiplicity of suits.”  *See, e.g.*, *Grokster*, 518 F.

4  Supp. 2d at 1220 (quoting Douglas Laycock, *The Death of the Irreparable Injury Rule*,

5  103 HARV. L. REV. 687, 714-716 (1990)).

6       Getty has shown that monetary damages are inadequate to compensate them for the

7  Camps’ infringement.  Given that the Camps have not participated in this case since they

8  moved the court to dismiss the case for lack of personal jurisdiction in June 2013, it is

9  likely that Getty will be unable to collect its monetary judgment from the Camps.  (*See*

10 Mot. to Dismiss (Dkt. # 15); *see generally* Dkt.)  In addition, the Camps have infringed

11 additional Getty images since this suit was instituted in April 2013.  It is therefore likely

12 that Getty would have to institute additional suits to end the Camps’ infringement and

13 collect its judgment if a permanent injunction were not entered.  Thus, the court finds that

14 monetary damages alone are inadequate to compensate Getty for the Camps’

15 infringement.

16 **c.**     **The Balance of Hardships Favors Getty**

17      Under the third factor, the court must consider “the hardships that might afflict the

18 parties by the grant or denial of Plaintiffs’ motion for a permanent injunction.”  *Grokster*,

19 518 F. Supp. 2d at 1220.  The court looks at the plaintiff’s hardship if the infringing

20 behavior does not stop, as well as the defendant’s “hardship in refraining from its

21 infringement.”  *See, e.g.*, *Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d

22 1049, 1057 (C.D. Cal. 2011).  A court may find that the balance of hardships favors a

defendant where there is a "separate legitimate business purpose" for the infringement. *See, e.g.*, *Grokster*, 518 F. Supp. 2d at 1220 (discussing how the balance of hardships may favor an infringing defendant).

There is no evidence that the Camps have a legitimate business purpose for their infringement; rather, the evidence produced at the hearing suggests that the Camps' infringement stems from an unwillingness to obtain proper licensing for the images they wish to use. In contrast, Getty stands to lose business and the ability to protect the content it licenses from photographers and offers to its customers on an exclusive basis. Because there is no legitimate purpose for the Camps' infringement and there is a threat to Getty's business, the balance of hardships favors Getty.

**d.     A Permanent Injunction Will Serve the Public Interest in Protecting Copyrights and Copyright Holders**

Finally, under the fourth factor, a permanent injunction is appropriate only if it will serve the public. Courts usually find that "the public interest is . . . served when the rights of copyright holders are protected against acts likely constituting infringement." *Perfect 10 v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. 2001); *accord Disney Enter., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006) ("[T]here is a greater public benefit in securing the integrity of Plaintiffs' copyrights than in allowing [a defendant] to make Plaintiffs' copyrighted material available to the public."). In short, the court asks whether the public will benefit from protecting the plaintiff's copyright or from protecting the defendant's infringing conduct. *See, e.g.*, *Grokster*, 518 F. Supp. 2d at 1221. This factor is largely the same as that analyzed under the statutory damages analysis.

ORDER- 14

1    The public interest favors protecting Getty's copyrights.  At the evidentiary

2   hearing, Getty presented evidence that its relationship with photographers who license

3   their photos to Getty depends on Getty's ability to enforce copyrights.  Further, the

4   rights-managed images model loses its exclusivity if people like the Camps are allowed

5   to infringe copyrights.  In contrast, the public would not benefit from protecting the

6   Camps' infringement because the Camps have no legitimate reason for doing so.

7    Therefore, all four factors support entering a permanent injunction against the

8   Camps.  Getty has suffered irreparable injury, cannot be adequately compensated by

9   monetary damages, and is faced with greater hardship than the Camps.  Further, it is in

10   the public's interest to protect copyrights from severe and sustained infringement like that

11   in which the Camps have engaged.

12   **e.    The Scope of Getty's Proposed Permanent Injunction is Narrowly Tailored**

13    The court turns next to the scope of the injunction, which must be narrowly

14   tailored.  *Silicon Images*, 642 F. Supp. 2d at 966.  At the evidentiary hearing, the court

15   requested supplemental briefing from Getty regarding the final four parts of its proposed

16   injunction to ensure that any permanent injunction the court would issue would be

17   "carefully crafted" to specify exactly what infringing conduct is enjoined.  The court

18   finds that Getty's proposed permanent injunction is narrowly tailored to preventing future

19   infringement of the same character.  The court will address each component of the

20   proposed injunction in turn.

21    Part 1(a) of Getty's proposed permanent injunction would enjoin the Camps from

22   further infringement of the 12 images at issue in the suit.  (Prop. Inj. at 2.)  Specifically,

Part 1(a) would prevent the Camps from "reproducing, distributing, displaying, or making any other infringing uses of the [12] copyrighted works." (*Id.*)  The court finds this part of the injunction reasonable because it is directed toward ending the Camps' infringement of the 12 copyrights in this case.

Part 1(b) of the proposed injunction seeks to enjoin the Camps from "modifying, altering, or incorporating copyright-protected elements" of these 12 images in new works.  (Prop. Inj. at 2.)  Getty alleged that the Camps altered its images by "adding spots and making other alterations to the photographs."  (Mot. for Def. Judg. at 5.)  Essentially, Getty seeks to prevent the Camps from using Getty's images to create unauthorized derivative works, one of the exclusive rights granted to copyright holders under 17 U.S.C. § 106.  *See* 17 U.S.C. § 106.  Getty has demonstrated that the Camps, when confronted with their infringement, modified some of Getty's images in an apparent attempt to circumvent liability for their infringement.  (*See, e.g.*, Mot. for Def. Judg. at 5.) Therefore, the court finds that this part of the proposed injunction is narrowly tailored to prevent the Camps from engaging in the same kind of infringing behavior they have engaged in since at least 2007.

Part 1(c) would enjoin the Camps from infringing any other images that Getty owns or licenses.  (Prop. Inj. at 3.)  Although this part of the proposed injunction may seem far-reaching at first glance, Ninth Circuit precedent supports enjoining infringers from infringing other materials owned or produced by the plaintiff.  *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1152 (9th Cir. 2011) (*Apple II*).  In *Apple II*, the Ninth Circuit Court of Appeals permanently enjoined future infringement of copyrighted works

ORDER- 16

1   "because liability has been established as between the parties, and the threat of harm

2   through future infringement . . . is real." *Id.* at 1161.  In this case, liability has been

3   established between Getty and the Camps through the Camps' default, and Getty has

4   demonstrated a threat of future infringement by the Camps, particularly in light of their

5   continued infringement even after this lawsuit was filed.  Therefore, the court finds that it

6   is appropriate to include this provision in the injunction because, even with it included,

7   the injunction remains narrowly tailored to prevent legal violations of a similar kind to

8   those that have already occurred:  namely, direct infringement of Getty copyrights by the

9   Camps.

10          Part 1(d) of the proposed injunction would prevent the Camps from "assisting,

11   aiding or abetting any other person or entity in engaging or performing any of the

12   activities" in Parts 1(a)-(c) of the proposed injunction.  (*See* Prop. Inj. at 2-3.)  This part

13   of the injunction is meant to "enjoin the Camps from conduct that does not constitute

14   direct infringement" (Brief at 5), because Getty has alleged that the Camps encouraged

15   infringement of Getty's photos, (Mot. for Def. Judg. at 3, n.1).  The court finds that the

16   Ninth Circuit's rationale regarding enjoining defendants from infringing additional works

17   beyond those at issue in the case extends to enjoining defendants from engaging in other

18   forms of infringement against the same plaintiff.  *See Apple II*, 658 F.3d at 1152; *see also*

19   *Microsoft Corp. v. Lopez*, No. C08-1743-JCC, 2009 WL 959219, at *5 (W.D. Wash. Apr.

20   7, 2009) (using "aiding and abetting" language in a permanent injunction to prevent

21   defendants from engaging in contributory infringement); *Microsoft Corp. v. EEE*

22   *Business, Inc.*, 555 F. Supp. 2d 1051, 1061 (N.D. Cal. 2008); *DFSB Kollective Co., Ltd.*

*v. Bing Yang*, No. C 11-1051 CW, Permanent Injunction (Dkt. # 39) (N.D. Cal. Mar. 28, 2013); *contra Grokster*, 518 F. Supp. 2d. at 1226-27 (refusing to enjoin defendants from engaging in direct infringement of a copyright when they had engaged in only contributory infringement).  Where liability has been established between the parties and there is a threat of future harm to plaintiffs from defendants' continued infringement, enjoining a defendant from engaging in contributory and vicarious infringement, as well as direct infringement, is reasonable and narrowly tailored to prevent similar infringement against the same plaintiff.  The court therefore finds Part 1(d) narrowly tailored to preventing the Camps' further infringement.

**f.     Destruction of the Infringing Materials Under 17 U.S.C. § 503(b) is Appropriate**

Under 17 U.S.C. § 503(b), a court has authority to order the destruction of all copies of the infringing material used by the defendants to infringe a copyright.  *See* 17 U.S.C. § 503(b).  Getty proposes in its injunction a provision that would order "the Camps [to] delete all copies of the copyrighted works listed in Paragraph 1(a) and any other photographic images owned or exclusively licensed to Getty Images from their computers and the websites they control."  (Prop. Inj. at 3.)  Courts in the Ninth Circuit have ordered the destruction of electronic materials used to infringe copyrights under 17 U.S.C. § 503(b).  *See, e.g.*, *Sony BMG Music Enter. v. Gray*, No. C-07-3854 WDB, 2008 WL 4239219, at *3-4 (N.D. Cal. Sept. 15, 2008); *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 WL 337836, at *11 (N.D Cal. Jan. 31, 2011).  The court finds that ordering the Camps to destroy all images exclusively licensed or owned by Getty and to

1  take down the infringing material from the websites they have designed is a meaningful

2  step toward preventing the Camps from continuing to infringe Getty's copyrights.  Thus,

3  this provision of the proposed injunction is also narrowly tailored to prevent further

4  infringement of a similar character.

5        For the reasons outlined above, the court adopts Getty's proposed injunction and

6  ENJOINS the Camps from infringing copyrights Getty owns or licenses pursuant to the

7  terms of the proposed injunction.

8                              **E.  CONCLUSION**

9        For the foregoing reasons, the court awards Getty maximum statutory damages of

10  $300,000.00 under 17 U.S.C. § 504 and ENJOINS the Camps from engaging in further

11  infringing conduct according to Getty's proposed permanent injunction.

12        Dated this 20th day of March, 2014.

13

14        _____

15        JAMES L. ROBART
          United States District Judge

16

17

18

19

20

21

22

ORDER- 19

1                          PERMANENT INJUNCTION

2          The court permanently enjoins the Camps, doing business as Virtual Clinics,
   Virtual Clinics USA, Veterinary Website Designers, and Vet Web Designers, their
3  agents, servants, employees, attorneys, and other persons acting in concert or
   participating with them from engaging in the following acts and practices:

4

5          1.   reproducing, distributing, displaying or making any other infringing uses of
               the following copyrighted works:

6

7               a.   200374104-001 Dog sleeping in bed between two people (focus on feet)
                    (Certificate of Registration VA 1-850-496);

8               b.   200396789-001 Brown and white dog licking tabby cat (Certificate of
                    Registration VAu 713-178);

9

10              c.   200518841-002 Mixed breed dog with paws covering eyes (Certificate
                    of Registration VA 1-881-280);

11              d.   200355950-001 Dog with suitcase, wearing Hawaiian shirt (VA 1-850-
                    499);

12

13              e.   200523984-003 Young woman lying on floor with dog using mobile
                    phone (Certificate of Registration VA-1-851-063);

14              f.   10104008 DOG COUPLE (Certificate of Registration VA 1-881-287);

15              g.   BD8365-001 Chinchilla cat wearing diamond tiara (Certificate of
                    Registration VA 1-881-285);

16

17              h.   CB8638-001 Male executive wearing telephone headset, smiling,
                    portrait (Certificate of Registration VA 1-881-281);

18              i.   200137589-001 Pit bull mix dog with tongue out, close-up (Certificate
                    of Registration VA 1-881-277);

19

20              j.   887206-001 Tabby cat wearing toy glasses and stethoscope, close-up
                    (Certificate of Registration VA 1-881-278);

21              k.   489050-016 White, standard poodle sitting on sofa watching television,
                    pink cast  (Certificate of Registration VA 1-881-283); and

22              l.   sb10069917c-001 Profile of Dalmatian yawning, fly going into mouth

1    (Certificate of Registration VA 1-740-624).

2        2.  modifying, altering, or incorporating copyright-protected elements of the
             copyrighted works listed in Part 1(a) in new works;

3
        3.  making any infringing uses of photographic images owned or exclusively
4           licensed to Getty; and

5        4.  assisting, aiding, or abetting any other person or entity in engaging in or
             performing any of the activities referred to in Parts 1(a)-1(c).

6        The court also orders the Camps to delete all copies of the copyrighted works
7    listed in Part 1(a) and any other photographic images owned or exclusively licensed to
     Getty from the Camps' computers and the websites the Camps control.  The court retains
8    jurisdiction to entertain such further proceedings and to enter such further orders as
     necessary or appropriate to implement and enforce the provisions of the permanent
9    injunction.  The court may award damages and other relief to Getty upon proof that the
     Camps have violated any provisions of this permanent injunction.

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21